Arlene **HARTUNG**, Richard Seth Hartung and Ronda Lee Hartung, Plaintiffs,

v.

**WASHINGTON IRON WORKS**, a Washington Corporation, Defendant.

Elsie **HAMMAN**, Plaintiff,

v.

**WASHINGTON IRON WORKS**, a Washington Corporation, Defendant.

Civ. Nos. 477, 476.

United States District Court
D. Montana,
Billings Division.

Nov. 25, 1964.

Marcus, McCroskey, Libner, Reamon, Williams & Dilley, Muskegon, Mich., Lee Overfelt, Billings, Mont., J. H. McAlear, Red Lodge, Mont., and Robert H. Wilson, Hardin, Mont., for plaintiffs.

Cooke, Moulton, Bellingham & Longo, Billings, Mont., for defendant.

## MEMORANDUM OPINION

JAMESON, Chief Judge.

Defendant has filed a motion in each of these cases to dismiss on the grounds of (1) lack of jurisdiction over the person of the defendant, and (2) insufficiency of process. Affidavits and briefs were filed on behalf of the respective

parties, and a hearing was held pursuant to the provisions of Rule 12(d) of the Federal Rules of Civil Procedure.

The motions involve the construction of Rule 4B(1) of the Montana Rules of Civil Procedure, which reads in pertinent part:

> "Subject to Jurisdiction. All persons found within the State of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
> \*　\*　\*　\*　\*　\*
>
> "(b) the commission of any act which results in accrual within this state of a tort action".

In its brief defendant assumed, for the purpose of argument only, "that service of process on the defendant was valid under the Montana Rules and under Montana Law, and that Rule 4B(1) is intended to, and does, extend the jurisdiction of the Montana courts over foreign corporations to the full extent permitted by the due process clause of the Fourteenth Amendment"; but defendant contends "that the due process traditional notions of fair play require the result that defendant has not, by its conduct submitted itself to the jurisdiction of the Montana courts".

This court has had occasion to review the Montana cases construing the phrase "doing business in the State of Montana" with respect to both substituted service and the regulation of corporations. See Graham & Ross Mercantile Co. v. Sprout, Waldron & Co., 1959, D.C., 174 F.Supp. 551, and Minnehoma Financial Company v. Van Oosten, 1961, D.C., 198 F.Supp. 200.

These cases and the Montana cases discussed therein were decided prior to the enactment of Rule 4B. Apparently, the Montana Supreme Court has not yet construed Rule 4B. The only case decided since its adoption, Greene Plumbing & Heating Co. v. Morris, Sept. 1, 1964, 21 St.Rep. 402, is not inconsistent with the conclusion reached herein.

The concept of Rule 4B is far more liberal than the old concept of "doing business in the state" considered in prior decisions. The Commission Note with respect to this rule reads in part:

> "This rule expands the exercise of personal jurisdiction over nonresidents in cases having substantial contacts with Montana. It is in accord with a trend that began more than thirty years ago with the nonresident motorist acts. The constitutional basis for such expanded jurisdiction is afforded by such decisions of the Supreme Court of the United States as International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 9 L.Ed. 95 (1945), and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). \* \* \* Under the new and flexible standard of due process a state may exercise personal jurisdiction whenever the relation between it and the particular litigation sued upon makes it reasonable for the state to try the particular case. In such an inquiry importance attaches to what the defendant has caused to be done in the forum state." See Mason, The Montana Rules of Civil Procedure, 23 Mont.L.Rev. 3, 12.

The affidavit of Jess A. Pardo, sales engineer for the defendant, states that negotiations for the sale of the cableway in question were conducted between affiant in the State of Washington and representatives of Morrison-Knudsen Company Inc. in Boise, Idaho, and that none of the contacts took place within the State of Montana; that the defendant did not supervise the installation of the cableway.

The affidavit states further, however, that affiant "did go to Montana on sev-

eral occasions to examine and consult with reference to said cableways in special instances requested by Morrison-Knudsen Company, Inc."; that he "visited the dam site after installation of the first cableway and prior to the installation of the second cableway * * *"; that defendant's shop foreman "at the request of the contractor went to Yellowtail Dam to check certain gears on the hoisting unit on said cableways, spending two days in Montana before the accident complained of in this suit and before the installation of the second cableway"; that another employee spent approximately two days in Montana at the request of the contractor doing "certain work with reference to concrete cars, a problem entirely unrelated to the cableways proper".

Attached to the affidavit are copies of documents. In a letter from Pardo to Morrison-Knudsen in Boise dated April 27, 1961, (Ex. A) he states, "We are revising our quotation on cableway equipment for Yellowtail Dam * * *" A purchase order (Ex. B) dated June 3, 1961, from Morrison-Knudsen to defendant, stamped "received", states as the first item "1 25 ton cableway for use on Yellowtail Dam near Hardin, Montana, as follows: * * *". The bill of lading or shipping order (Ex. C) from the defendant dated June 15, 1961, states that there was sold to "Yellowtail Constructors, P. O. Box 450, Hardin, Montana", "1 8-yard High Speed Cableway for use on Yellowtail Dam near Hardin, Montana as follows: * * *". The amount shown is $423,700.

An affidavit of Lee Overfelt, counsel for plaintiff, recites that Morrison-Knudsen Company, Inc. was a member of Yellowtail Constructors, a joint venture formed for the purpose of the construction of Yellowtail Dam; that all of the items set forth in Exhibits A, B and C "were purchased for the construction, the cableways and cable towers referred to in plaintiffs' complaint filed herein".

The affidavit of Phillip F. Frink, Vice President and Secretary of defendant, states that the order for the cableway was accepted in Seattle and the machinery in question was manufactured pursuant to proposal by Morrison-Knudsen of Boise, Idaho. No location engineering was done by the defendant at the site in Montana.

The recent New York case of Feathers v. McLucas, 21 A.D.2d 558, 251 N.Y.S.2d 548, is analogous to this case. There the New York statute provided courts of that state may exercise personal jurisdiction over "an absent non resident defendant where a cause of action arises from the commission of a tortious act within the state." The New York court, appellate division, said the minimal contacts with New York had been established where the manufacturer of a petroleum tank trailer sold to a Pennsylvania interstate carrier could be expected reasonably to foresee that the tank trailer might be used in adjoining New York State. "The record demonstrates that it had knowledge that the instant tank was constructed for its ultimate consignee, a Pennsylvania domiciliary, and was intended for use in interstate commerce." The court said further:

"We think that in expanding the State's in personam jurisdiction over nondomiciliaries the Legislature did not intend to separate foreign wrongful acts from resulting forum consequences and that the acts complained of here can be said to have been committed in this state. [Restatement, 2d, Conflict of Laws, Tent.Dr. # 3 [1956] § 91a. * * *

"To satisfy the requirements of Federal due process a nonresident defendant must have such 'minimum contacts' within the territory of the forum 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice," ' and ' * * * make it reasonable * * * to require the corporation to defend the particular suit which is brought there.

\* \* \* Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. Jurisdiction of a State may be extended over a foreign corporation where 'single or occasional acts \* \* \* because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit' on causes of action arising therefrom (International Shoe Co. v. [State of] Washington, 326 U.S. 310, 316–319, 86 S.Ct. 154, 9 L.Ed. 95; see, also, McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223). The single act statute has merely codified the minimum contacts test. The amount and kind of activities which must be carried on in the forum State to subject a nonresident defendant to its jurisdiction are to be determined by the facts of each case. (Perkins v. Benquet Consol. Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485; International Shoe Co. v. Washington, supra.)"

This decision seems to be in accord with the trend of recent cases. See, for example, McMahon v. Boeing Airplane Company, N.D.Ill.1961, 199 F.Supp. 908, and cases there discussed.

The provisions of the Montana statute that the court has jurisdiction where the commission of an act results "in accrual within this state of a tort action" is even stronger than the provision of the comparable statutes in New York and Illinois granting jurisdiction where the cause of action arises from "the commission of a tortious act within the state". The contacts here were, if anything, greater than those in the Feathers case. It is my conclusion that these contacts are sufficient to satisfy the requirements of the due process clause of the Fourteenth Amendment within the meaning of International Shoe Co. v. State of Washington and McGee v. International Life Ins. Co., supra.