NO. 94-450

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

PHILIP A. BIRD and
CARA BIRD,

            Plaintiffs and Appellants,

    -v-

M.B. "BUCK" HILLER,

            Defendant and Respondent.


APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

        Dale F. Myers, Helena, Montana

        For Respondent:

        Richard E. Gillespie, Keller, Reynolds, Drake,
        Johnson & Gillespie, Helena, Montana

Submitted on Briefs: December 28, 1994

Decided: April 11, 1995

Filed:    APR 11 1995

FILED

CLERK OF SUPREME COURT
STATE OF MONTANA

                                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Appellants, Philip A. Bird and Cara Bird, appeal from a decision and order of the First Judicial District Court, Lewis and Clark County, dismissing their complaint against Respondent, M.B. "Buck" Hiller for lack of personal jurisdiction. We affirm.

The issue on appeal is whether Montana has personal jurisdiction over Mr. Hiller pursuant to Rule 4B(1)(b), M.R.Civ.P.

The underlying events leading up to this action commence in September 1989, when Carolyn Bird, Mr. Bird's wife, and their adult daughter Cara Bird, were involved in an automobile accident in Idaho. The Birds were Montana residents at all times relevant to this action. After receiving a referral from an attorney in Helena, Montana, Mr. Bird contacted Mr. Hiller, an Idaho attorney, regarding Hiller's potential representation of Mr. Bird, Carolyn and Cara in connection with the automobile accident. Mr. Bird travelled to Idaho and met with Mr. Hiller to discuss the claims arising out of the accident.

On or about May 16, 1991, Mr. Hiller sent a contingency fee agreement to Mr. Bird in Montana. Mr. Bird signed the contingency fee agreement in Montana, and it was sent to Mr. Hiller who received it at his Idaho office. Cara, however, did not sign the contingency fee agreement nor was her name mentioned in the agreement. Mr. Hiller then undertook representation of Mr. Bird, Carolyn and Cara regarding the automobile accident. Mr. Hiller filed a verified complaint which was signed by Mr. Bird, Carolyn and Cara in the United States District Court for the District of

2

Idaho on June 28, 1991. Prior to trial, Mr. Hiller negotiated settlements of the Birds' claims. Sometime after the settlements were executed, the Birds contacted Dale F. Myers, a Helena attorney, and a disagreement arose over the settlement. Subsequently, on July 7, 1992, Mr. Hiller moved to withdraw as counsel, and advised the defendants in the underlying automobile case that the Birds were reluctant to move forward with the settlement agreement.

Thereafter, the defendants in the underlying automobile case moved to enforce the settlement agreement. On July 10, 1992, Mr. Myers filed a motion for admission pro hac vice in the United States District Court for the District of Idaho. The case was called before the Idaho court, and the court issued a default judgment on May 5, 1993, in favor of the defendants' motion for enforcement of the settlement agreement, because the Birds failed to appear in person or through counsel. On February 3, 1994, two settlement checks were issued, one for Cara and one for Carolyn. Mr. Hiller and Mr. Myers were included as payees on both of the checks, along with the names of the respective recipients.

Meanwhile, a dispute arose between the Birds and Mr. Hiller regarding his attorney's fees. Mr. Hiller asserted that he was entitled to one-third of each settlement check, and the Birds asserted Mr. Hiller was only entitled to one-third of Carolyn's settlement check. The Birds maintained that Mr. Hiller was not entitled to any portion of Cara's settlement because Cara had never agreed to Mr. Hiller's representation, and because she did not sign the contingency fee agreement.

3

In February, 1994, Mr. Myers sent Mr. Hiller the settlement checks asking him to sign and return the checks. In a letter dated February 25, 1994, Mr. Hiller acknowledged that he received the settlement checks and advised Mr. Myers that "[u]nless I receive express written authorization to negotiate these drafts, deduct our attorney's fees and costs, and remit the balance to the Birds, I will file an action [in Idaho] requesting a court order permitting recovery of attorney's fees and costs incurred."

On March 2, 1994, Cara and Mr. Bird filed a complaint against Mr. Hiller in the First Judicial District Court, Lewis and Clark County, charging him with theft and conversion, and fraud and deceit arising out of the dispute over the settlement money. On March 25, 1994, Mr. Hiller filed a motion pursuant to Rule 12, M.R.Civ.P., requesting the court, among other things, to dismiss the complaint for lack of personal jurisdiction. After considering the parties' briefs and numerous exhibits, the court, in a decision and order dated July 12, 1994, dismissed the Birds' complaint for lack of personal jurisdiction over Mr. Hiller. The Birds appeal from this decision and order.

The parties do not dispute the material facts. Based upon the undisputed material facts, the District Court came to the legal conclusion that the Montana court did not have personal jurisdiction over Mr. Hiller. This Court reviews legal conclusions to determine whether the district court's interpretation of the law is correct. Warnack v. Coneen Family Trust (1994), 266 Mont. 203, 207, 879 P.2d 715, 718.

This Court applies a two-part test to determine whether a

4

Montana court can exercise personal jurisdiction over a nonresident defendant. First we must determine if personal jurisdiction exists either by way of the defendant being "found" within the state, or by way of the long-arm statutes. Second we must determine whether exercising jurisdiction comports with the defendant's due process rights. Edsall Const. Co., Inc. v. Robinson (1991), 246 Mont. 378, 381, 804 P.2d 1039, 1041. If, after determining personal jurisdiction does not exist under the first step of the analysis, further analysis under the second step is unnecessary. Edsall, 804 P.2d at 1041.

The concept of personal jurisdiction is controlled by Rule 4B, M.R.Civ.P. The pertinent part of that rule for purposes of this case provides:

> (1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through any employee, or through an agent, of any of the following acts:
> (b) the commission of any act which results in accrual within this state of a tort action; .

The principles of both general and specific jurisdiction are codified in Rule 4B, M.R.Civ.P. General jurisdiction concerns whether a party can be "found" within the state. Simmons Oil Corp. v. Holly Corp. (1990), 244 Mont. 75, 83, 796 P.2d 189, 194. A nonresident defendant can be "found" within the state for general jurisdiction purposes if the defendant's activities within the state are "substantial" or "systematic and continuous." Simmons Oil, 796 P.2d at 194. On the other hand, the principle of specific

jurisdiction provides that:

> [J]urisdiction may be established even though a defendant maintains minimum contacts with the forum as long as the plaintiff's cause of action arises from any of the activities enumerated in Rule 4B(1), M.R.Civ.P. and the exercise of jurisdiction does not offend due process.

Simmons Oil, 796 P.2d at 194.

In the instant case, the parties do not contend that Montana has general jurisdiction over Mr. Hiller. However, the Birds allege that specific long-arm jurisdiction exists over Mr. Hiller pursuant to Rule 4B(1)(b), M.R.Civ.P., because the torts of conversion[1], fraud, and deceit accrued in Montana.

The Birds maintain that the elements of the tort of conversion, accrued in Montana based on the following events. First, Mr. Hiller sent the attorney's fee contract into Montana and it was executed in this state. The settlement agreement did not specifically mention that Cara Bird agreed to Mr. Hiller undertaking her representation, nor did the contract mention that Mr. Hiller would charge Cara for his representation. Second, Mr. Hiller sent a letter dated January 25, 1994, to the Birds in Montana, wherein he advised the Birds that he was going to withhold the settlement checks until he received authorization to negotiate the checks and deduct attorney's fees and costs.

The Birds argue that the tort of conversion did not accrue until they had knowledge that Mr. Killer had allegedly exercised unauthorized dominion over the settlement checks. Accordingly, the

---

[1] The Birds alleged the torts of "theft and conversion" in their complaint. However, because theft is not a tort, we shall limit our discussion to the tort of conversion.

6

Birds conclude the tort accrued when they received the January 25, 1994 letter notifying them that unless the Birds gave Mr. Hiller authorization to negotiate the drafts and deduct his claimed attorney's fees and costs, he intended to keep the checks and file suit. The Birds contend that the tort accrued in Montana because that is where Mr. Hiller sent the January 25, 1994 letter.

The Birds rely on Lee v. United States (9th Cir. 1987), 809 F.2d 1406, in support of their argument that the tort of conversion accrued in Montana because that is where they learned of the alleged conversion. In Lee, the Ninth Circuit Court of Appeals noted that statutes of limitations are "triggered by [claimants'] knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law." Lee, 809 F.2d at 1410, quoting Blanton v. Anzalone (9th Cir. 1985), 760 F.2d 989, 992.

The Birds argument is unpersuasive. While in some cases it may be true that the statute of limitations does not begin to run until the injured party knows or should have known of the injury, § 27-2-102(3), MCA, this principle is not applicable in resolving the question of where the cause of action arose for purposes of jurisdiction. Conversion is defined as "a distinct act of dominion wrongfully exerted over one's property in denial of, or inconsistent with, the owner's right . . ." Gebhardt v. D.A. Davidson & Co. (1983), 203 Mont. 384, 389, 661 P.2d 855, 858. (Citation omitted.) Therefore, the alleged tort of conversion in the instant case would have accrued in Idaho, as that is where Mr. Hiller came into possession of the checks, and allegedly asserted

7

unauthorized control over the checks. Accordingly, we conclude that Mr. Hiller did not do any act which resulted in the accrual of the tort of conversion within Montana.

The Birds also allege that the torts of fraud and deceit occurred in Montana as a result of "a false, misleading and untrue contract which Hiller personally drafted and sent to Philip Bird in Lewis and Clark County." The Birds contend that the fee agreement evidences Mr. Hiller's intent to defraud and deceive them. They note that the fee agreement did not mention Mr. Hiller's representation of Cara, or mention that Mr. Hiller would take a fee for any services he provided to Cara. The Birds conclude that Mr. Hiller had engaged in deceptive practices because he had always intended to represent Cara and take a fee for his services even though he had no agreement with her to do so. They allege that the torts of fraud and deceit accrued in Montana because Mr. Hiller sent the fee agreement to the Birds in Montana for one express purpose, but was intending to use it to secure fees for another unstated purpose. From the above allegations, we conclude that the Birds' claims regarding fraud and deceit arise from Mr. Killer's initial agreement to represent the Birds.

The Birds acknowledge in their complaint that Mr. Bird hired Mr. Hiller to represent Mr. and Mrs. Bird "for claims arising out of an automobile accident which occurred in the State of Idaho." Mr. Bird travelled to Idaho to seek out Mr. Hiller's representation. All representation regarding the claims took place in Idaho, and Mr. Hiller negotiated the settlement in Idaho, before withdrawing as the Birds' attorney. While it is true that Mr.

8

Hiller did send the contingency fee agreement, and other letters to the Birds at Mr. Bird's office in Helena, we have previously held that jurisdiction is not acquired through interstate communications pursuant to a contract to be performed in another state. Edsall, 804 P.2d at 1042, citing Simmons v. State (1983), 206 Mont. 264, 280, 670 P.2d 1372, 1380. We conclude that any alleged fraud or deceit that Mr. Hiller perpetrated on the Birds as a result of his unstated intentions regarding the representation of Cara would have accrued in Idaho.

Because we have determined that personal jurisdiction does not exist either as a result of Mr. Hiller being found in Montana or pursuant to our long-arm statute, further analysis is unnecessary. Edsall, 804 P.2d at 1041. We hold that the District Court was correct in concluding that Montana did not have personal jurisdiction over Mr. Hiller.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9

April 11, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Dale F. Myers
Attorney at Law
21 No. Last Chance Gulch, Ste. 210
Helena, MT  59601

Richard E. Gillespie, Esq.
Keller, Reynolds, Drake, Johnson & Gillespie
38 So. Last Chance Gulch
Helena, MT  59601


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *A. Gallagher*
Deputy