# BI-LO FOODS, INC.,
## Plaintiff and Appellant,
### v.
# ALPINE BANK, CLIFTON; ALPINE
# BANK, GRAND JUNCTION; and
# DONALD E. HERMANN, JR., d/b/a
# D. HERMANN & CO.,
## Defendants and Respondents.

No. 97-090.
Submitted on Briefs June 19, 1997.
Decided February 24, 1998.
1998 MT 40.
55 St.Rep. 131.
287 Mont. 367.
955 P.2d 154.

For Appellant: **Margaret L. Sanner**, Milodragovich, Dale, Steinbrenner & Binney, Missoula.

For Respondent: **John E. Bohyer, Fred Simpson,** Phillips & Williams, Missoula.

JUSTICE NELSON delivered the Opinion of the Court.

¶1 Bi-Lo Foods, Inc. (Bi-Lo) appeals an order of the District Court for the Fourth Judicial District, Missoula County, dismissing Bi-Lo's complaint against Alpine Bank, Clifton and Alpine Bank, Grand Junction (Alpine) for lack of personal jurisdiction. We affirm.

¶2 We address the following issues on appeal:

¶3· 1. Whether the District Court erred in determining that it did not have personal jurisdiction over Alpine.

¶4 2. Whether Bi-Lo appealed without substantial or reasonable grounds thus warranting sanctions.

## Factual and Procedural Background

¶5 Bi-Lo is a corporation whose principal place of business is in Missoula, Montana. Donald Hermann d/b/a D. Hermann & Co. (Hermann) is a sole proprietorship licensed to do business in Colorado. Alpine is a corporation organized and chartered under the laws of Colorado and it is licensed to do business in Colorado.

¶6 Bi-Lo and Hermann entered into negotiations for the purchase of refrigeration equipment. As part of these negotiations, Hermann instructed Bi-Lo to deposit earnest money into an escrow account at Alpine's offices in Grand Junction, Colorado. On March 3, 1994, Bi-Lo sent Alpine a check in the amount of $10,000 listing Alpine as payee. In response to Bi-Lo's claim that there were no other notations on the check, Alpine alleged that included with the check was the number for Hermann's bank account with Alpine. Consequently, Alpine deposited the check into Hermann's account. Thereafter, negotiations between Bi-Lo and Hermann broke down. Bi-Lo demanded that its escrow money be returned, but both Alpine and Hermann refused.

¶7 On August 2, 1995, Bi-Lo filed a complaint against Alpine alleging that Alpine acted negligently and breached the transfer warranty created by § 30-4-207(1)(a), MCA. Bi-Lo also sought recovery from Donald Hermann for conversion, fraudulent inducement and unjust enrichment. Pursuant to Rule 12(b)(2), M.R.Civ.P., Alpine moved to dismiss the claims against it, arguing that the trial court did not have personal jurisdiction over Alpine. Bi-Lo filed a brief opposing the motion to dismiss and moved for leave to engage in discovery to support its assertion that Montana does have personal jurisdiction over Alpine.

¶8    In an order filed November 22, 1995, the District Court granted Bi-Lo leave to conduct limited, written discovery on the issue of jurisdiction. Thereafter, a dispute arose between the parties over Bi-Lo's attempt to discover whether Alpine had any customers that were residents of Montana and whether Alpine had ever provided financing for business activities in Montana. Alpine insisted that the majority of its closed accounts and old transactions were only available on microfiche and that it would take an employee five or six months to search through these files to obtain the information Bi-Lo requested. As a result, Bi-Lo filed a motion for sanctions against Alpine for failing to make a reasonable attempt to fulfill its discovery obligations and Alpine filed a motion for a protective order claiming that Bi-Lo's discovery requests were unduly burdensome.

¶9    On March 8, 1996, the District Court denied both Bi-Lo's motion for sanctions and Alpine's motion for a protective order. Nevertheless, the court determined that the costs of discovery were burdensome to Alpine and it ordered Bi-Lo to pay the costs of obtaining further discovery. Bi-Lo responded to this order by stating that it did not wish to pay Alpine's alleged costs of searching its files.

¶10    On April 8, 1996, Alpine renewed its motion to dismiss for lack of personal jurisdiction and its motion for a protective order. Two weeks later, Alpine filed a supplemental brief opposing further discovery. Included with this brief was an affidavit from Alpine's president stating that he had directed one of his employees to create a special computer program to search the current records of the Grand Junction bank for any customers with Montana addresses. The search located only one customer with a Montana address. The records on this customer indicated that he was living in Colorado at the time he took out a loan with Alpine and that he later moved to Montana. Bi-Lo subsequently requested that Alpine engage in the same type of search in its Clifton location.

¶11    On May 24, 1996, the District Court ordered Alpine to file an affidavit containing a statement of the costs associated with the development of the computer program used to search Alpine's records, the cost of the search already conducted and the expected cost of the additional search requested by Bi-Lo. However, on July 26, 1996, before Alpine could comply with the court's request, Bi-Lo notified the court that it was satisfied that it had received adequate responses to its discovery requests and that Alpine's motion to dismiss was ripe for adjudication.

¶12    On November 26, 1996, the District Court issued its Memorandum and Order granting Alpine's motion to dismiss for lack of personal jurisdiction. Bi-Lo appeals from this order.

### Issue 1.

¶13    **Whether the District Court erred in determining that it did not have personal jurisdiction over Alpine?**

¶14    ■ In granting Alpine's motion to dismiss for lack of personal jurisdiction, the District Court concluded that any alleged negligence or breach of warranty as a result of Alpine's actions accrued in Colorado, not in Montana. Moreover, the court concluded that Alpine does not have the requisite "minimum contacts" with the State of Montana and that the exercise of jurisdiction over Alpine would not be reasonable. This Court reviews legal conclusions to determine whether the district court's interpretation of the law is correct. *Bird v. Hiller* (1995), 270 Mont. 467, 470, 892 P.2d 931, 932 (citing *Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, 207, 879 P.2d 715, 718).

¶15    To determine whether a Montana court can exercise personal jurisdiction over a nonresident defendant, this Court applies a two-part test:

> First we must determine if personal jurisdiction exists either by way of the defendant being "found" within the state, or by way of the long-arm statutes. Second we must determine whether exercising jurisdiction comports with the defendant's due process rights. If, after determining personal jurisdiction does not exist under the first step of the analysis, further analysis under the second step is unnecessary.

*Bird*, 270 Mont. at 470, 892 P.2d at 933 (citing *Edsall Const. Co., Inc. v. Robinson* (1991), 246 Mont. 378, 381, 804 P.2d 1039, 1041).

¶16    Personal jurisdiction in Montana is controlled by Rule 4B, M.R.Civ.P., which provides in pertinent part:

> (1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
> (a) the transaction of any business within this state;
>
> (b) the commission of any act which results in accrual within this state of a tort action;

(c) the ownership, use or possession of any property, or of any interest therein, situated within this state;

(d) contracting to insure any person, property or risk located within this state at the time of contracting;

(e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or

(f) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

¶17    Rule 4B(1), M.R.Civ.P., incorporates the principles of both general and specific jurisdiction. General jurisdiction is found within the first sentence of Rule 4B(1) and pertains to whether a party can be "found" within Montana. *Bird*, 270 Mont. at 471, 892 P.2d at 933 (citing *Simmons Oil Corp. v. Holly Corp.* (1990), 244 Mont. 75, 83, 796 P.2d 189, 194).

A party is "found within" the state if he or she is physically present in the state or if his or her contacts with the state are so pervasive that he or she may be deemed to be physically present there. A nonresident defendant that maintains "substantial" or "continuous and systematic" contacts with the forum state is found within the state and may be subject to that state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum.

*Lurie v. 8182 Maryland Associates* (1997), 282 Mont. 455, 458, 938 P.2d 676, 678 (quoting *Simmons Oil*, 244 Mont. at 83, 796 P.2d at 194).

¶18    ■ The concept of specific long-arm jurisdiction is addressed in the remainder of Rule 4B(1). Under this concept, specific long-arm jurisdiction may be established, even though a defendant maintains minimum contacts with the forum, as long as the plaintiff's cause of action arises from any of the activities enumerated in Rule 4B(1), and the exercise of jurisdiction does not offend due process. *Bird*, 270 Mont. at 471, 892 P.2d at 933 (citing *Simmons Oil*, 244 Mont. at 83-84, 796 P.2d at 194).

¶19    ■ In the case before us on appeal, Bi-Lo does not contend that Montana has general jurisdiction over Alpine. Alpine cannot be said to be "found" within Montana as Alpine does not maintain "substantial" or "continuous and systematic" contacts within Montana. Alpine has no employees in Montana and does not conduct or transact business in Montana. Alpine does not advertise in Montana or other-

wise solicit business from Montana residents. Alpine does not own any real or personal property in Montana. Alpine had never had any contact with Bi-Lo prior to receiving Bi-Lo's check. Alpine had not solicited any business from nor attempted to engage in any relationship with Bi-Lo in Montana or Colorado. Alpine never entered into any contract with Bi-Lo to render services or furnish materials to Bi-Lo. Bi-Lo does not maintain any accounts with Alpine. During discovery, it was learned that Alpine's Grand Junction location has only one current customer with a Montana address. However, at the time that customer applied for his loan with Alpine, he had a Colorado address.

¶20 ■ Bi-Lo alleged in its complaint that specific long-arm jurisdiction exists over Alpine because Bi-Lo's cause of action arises from the activities enumerated in Rule 4B(1), specifically subsections (a), (b) and (e). However, on appeal, Bi-Lo argues for specific long-arm jurisdiction only under subsection (b) which subjects any person to the jurisdiction of the courts of this state for "the commission of any act which results in accrual within this state of a tort action." Bi-Lo argues that the torts of negligence and breach of warranty accrued in Montana because the injury occurred here.

¶21 Bi-Lo contends that by cashing its check and disbursing the funds to Hermann, Alpine took voluntary actions which were calculated to have an effect in Montana, did cause injury in Montana to a Montana resident, and should have caused Alpine to reasonably anticipate being haled into court in Montana. Bi-Lo argues that courts throughout the country have upheld constitutional challenges to jurisdiction over nonresident defendants where intentional and/or negligent tortious activity was committed outside the forum state but where the resulting injury was experienced in the forum state.

¶22 Bi-Lo relies on several cases from the United States District Court for the District of Montana for its proposition that a tort action accrues in the state where the injury occurs. We conclude that Bi-Lo's reliance on these cases is misplaced.

¶23 In the first of these cases, *Bullard v. Rhodes Pharmacal Co.* (D. Mont. 1967), 263 F.Supp. 79, a Montana resident brought a products liability action against an Ohio corporation that manufactured hair styling products. The plaintiff alleged that the product caused damage to her respiratory system. The court held that personal jurisdiction under Montana's long arm statute was proper. *Bullard*, 263 F.Supp at 82. In *Bullard*, the plaintiff purchased the product in Montana and used the product in Montana. Thus, both the

injury-causing event (the purchase and use of the product) and the injury occurred in Montana.

¶24    In *Hartung v. Washington Iron Works* (D. Mont. 1964), 267 F.Supp. 408, also cited by Bi-Lo, several workmen were killed because of the alleged defective design of a cableway manufactured by a nonresident defendant. The court held that even though the negotiations for the sale of the cableway were conducted in Washington and the defendant did not supervise the installation of the cableway, sufficient contacts existed to find personal jurisdiction proper within Montana. *Hartung*, 267 F.Supp. at 411. In *Hartung*, representatives of the defendant came to Montana "to examine and consult" regarding the installation and use of the cableway. Moreover, the injury-causing event (the failure of the cableway) and the injury occurred in Montana.

¶25    In *Scanlan v. Norma Projektil Fabrik* (D. Mont. 1972), 345 F.Supp. 292, the plaintiff brought a personal injury action against a Swedish ammunition manufacturer after sustaining injuries due to allegedly defective ammunition. The manufacturer had no place of business or agents in the United States and the plaintiff did not purchase the ammunition in Montana. However, the accident occurred while the plaintiff was on a hunting trip in Montana. The court held that personal jurisdiction over the nonresident defendant was proper in Montana. *Scanlan*, 345 F.Supp. at 293. Again the injury-causing event (the explosion of the ammunition) and the injury occurred in Montana.

¶26    Finally, in *McGee v. Riekhof* (D. Mont. 1978), 442 F.Supp. 1276, the plaintiff underwent eye surgery in Utah by the defendant physician. After the surgery the plaintiff returned to Montana where he received medical advice from the doctor by telephone that he could return to work. On his first day back at work, the plaintiff re-injured his eye. The court held that jurisdiction over the defendant physician was proper based upon the fact that the telephone call clearing the plaintiff to return to work amounted to a new diagnosis and was rendered to plaintiff while he was in Montana. *McGee*, 442 F.Supp at 1279. Once again, both the injury-causing event (the new diagnosis clearing the plaintiff to return to work) and the injury occurred in Montana. In addition, the court in *McGee* stated:

> In the case of personal services focus must be on the place where the services are rendered, since this is the place of the ... patient's need. ... It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable

tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. *McGee*, 442 F.Supp. at 1278 n.1 (citing *Wright v. Yackley* (9th Cir. 1972), 459 F.2d 287, 289-90).

¶27    Unlike the cases cited by Bi-Lo, the injury-causing event in the case at bar (depositing the check into Hermann's bank account) occurred in Colorado, not Montana. Furthermore, as stated in *McGee*, "focus must be on the place where the services are rendered," which in this case was Colorado. *McGee*, 442 F.Supp at 1278 n.1.

¶28    Both the District Court and Alpine rely on this Court's decision in *Bird v. Hiller* (1995), 270 Mont. 467, 892 P.2d 931, to support dismissal of Bi-Lo's claim for lack of personal jurisdiction. We find this case dispositive.

¶29    In *Bird*, several Montana residents retained an Idaho attorney to represent them in their claims arising out of an automobile accident in Idaho. After the attorney reached a settlement on behalf of the plaintiffs, a disagreement arose between the attorney and plaintiffs over the attorney fees. Because the settlement checks named the attorney as one of the payees, the plaintiffs sent the checks to him to endorse. However, he refused to return the checks or remit the proceeds to the plaintiffs unless they agreed to allow him to deduct his fees and expenses. The plaintiffs then filed suit against the attorney in a Montana court alleging claims of conversion, fraud and deceit. The district court dismissed the complaint for lack of personal jurisdiction over the attorney. *Bird*, 270 Mont. at 470, 892 P.2d at 931.

¶30    The plaintiffs in Bird argued on appeal that the tort of conversion accrued in Montana based on the attorney's acts of sending them a fee contract and a letter stating that he was going to withhold the settlement checks. We rejected the plaintiff's argument holding that the tort accrued in Idaho because that is where the attorney came into possession of and allegedly asserted unauthorized control over the checks. *Bird*, 270 Mont. at 472, 892 P.2d at 934.

¶31    So too, in the instant case, Alpine did not engage in any activity in Montana. All acts giving rise to Bi-Lo's claims of negligence and breach of warranty occurred in Colorado. Bi-Lo sent its check to Alpine in Colorado. Alpine deposited the check into the account of one of its customers in Colorado. Alpine's alleged mishandling of the check occurred in Colorado. Accordingly, Alpine's activities did not result in the accrual of a tort action in Montana.

¶32    Since Bi-Lo has not alleged any claim of general jurisdiction and since we have determined that Alpine has not engaged in any of the several activities enumerated in our specific long-arm jurisdiction statute, our analysis ends here and we have no authority to exercise jurisdiction. *Simmons v. State* (1983), 206 Mont. 264, 272, 670 P.2d 1372, 1376. *See also Bird*, 270 Mont. at 470, 892 P.2d at 933; *Edsall*, 246 Mont. at 381, 804 P.2d at 1041.

¶33    Accordingly, we hold that the District Court did not err in granting Alpine's motion to dismiss for lack of personal jurisdiction.

## Issue 2.

¶34    ■ **Whether Bi-Lo appealed without substantial or reasonable grounds thus warranting sanctions.**

¶35    Alpine asks this Court to award it its fees pursuant to Rule 32, M.R.App.P., which provides:

> If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

Alpine contends that it has incurred thousands of dollars in attorneys' fees responding to discovery, seeking protective orders, and moving for dismissal when the lack of personal jurisdiction in this case is clear. Bi-Lo contends, on the other hand, that sanctions are not warranted in this case as there is an arguable basis for the appeal.

¶36    ■ This Court does not readily impose sanctions for filing frivolous appeals. *Federated Mut. Ins. Co. v. Anderson* (1996), 277 Mont. 134, 142, 920 P.2d 97, 102. As a general rule, we impose sanctions in cases only where the appeal is entirely unfounded and intended to cause delay, *CNA Ins. Companies v. Dunn* (1995), 273 Mont. 295, 301, 902 P.2d 1014, 1018, or where counsel's actions otherwise constitute an abuse of the judicial system, *Bickler v. The Racquet Club Heights Assoc.* (1993), 258 Mont. 19, 25, 850 P.2d 967, 971.

¶37    ■ We will not impose sanctions under Rule 32, where a reasonable ground for an appeal exists. *Tope v. Taylor* (1988), 235 Mont. 124, 132, 768 P.2d 845, 850 (citations omitted). While Bi-Lo's grounds for appeal in this case may be weak, they are not unreasonable, therefore, we deny Alpine's request for sanctions.

¶38    Affirmed.

CHIEF JUSTICE TURNAGE, JUSTICES GRAY, REGNIER and TRIEWEILER concur.