No. 98-362

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 28N

IN RE ESTATE OF KENNETH G. AXVIG,

Deceased.

MORTON GOLDSTEIN, Individually,

Appellant,

v.

ESTATE OF KENNETH G. AXVIG, Deceased,

and its Personal Representative, Ole Axvig,

Respondent.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Hill,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Andrew Utick; Utick & Grosfield; Helena, Montana

For Respondent:

Maxon R. Davis and Dennis Tighe; Davis, Hatley,

Haffeman & Tighe, P.C.; Great Falls, Montana

Submitted on Briefs: November 5, 1998

Decided: February 19, 1999

Filed:

No

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. This is an appeal that evolves from a probate in which the respondent, Ole Axvig, filed a motion to compel the appellant, Mort Goldstein, to account for payments Goldstein made to himself as the personal representative and attorney for Kenneth Axvig's estate. The Twelfth Judicial District Court, Hill County, ordered Goldstein to provide an accounting of the payments, which he failed to do. Thus, the District Court ordered Goldstein to reimburse the estate $56,942.55 and stated that if he did not do so, he would be deemed in contempt of court and subject to execution on his obligation in the same manner as a judgment. Goldstein alleges that the District Court issued its order in violation of his due process rights since he was not given proper notice and the opportunity to be heard. Goldstein appeals the District Court's order. We affirm.**

**¶3. We consider two issues on appeal:**

**¶4. 1. Was Goldstein denied due process of law under the Montana Constitution?**

**¶5. 2. Should Axvig be awarded costs and fees?**

We do not consider Goldstein's due process argument under the United States Constitution because he cites only the Montana Constitution and Montana case law as support to his argument. Also, since we affirm the District Court on the first issue, we do not consider a separate issue raised by Goldstein, whether upon remand the presiding District Court Judge should be disqualified.

## FACTUAL BACKGROUND

¶6. Respondent's father, Kenneth Axvig, passed away on August 26, 1996, leaving an estate valued at $1.8 million. His last will, which was prepared by Goldstein, disinherited Kenneth's son, Ole Axvig (Axvig), and made Goldstein devisee of one-half of the estate, and further named Goldstein as attorney and personal representative of the estate, as well as trustee of a testamentary trust.

¶7. On September 6, 1996, Axvig filed a petition in the Twelfth Judicial District Court, Hill County, to request supervised administration of the estate, pursuant to § 72-3-401, MCA, and to challenge the validity of the will. In response to Axvig's petition, the District Court ordered Goldstein to restrain from exercising any powers of administration except as necessary to preserve the estate. One month later, Axvig filed a motion alleging that Goldstein violated the District Court's order and to request that he show cause. After a show cause hearing was held, the District Court issued an order on December 10, 1996, expressing its concerns that Goldstein collected over $220,000 in unsubstantiated payments from Kenneth Axvig's accounts and continued to prosecute various matters that were initiated before Kenneth Axvig's death. The December 10, 1996, order restrained Goldstein from further prosecuting any claims on behalf of the estate or from taking any action which would serve to cause an expenditure of estate funds, except those expenditures which would directly and demonstrably preserve the estate.

¶8. For the next several months, the parties prepared for a jury trial on the validity of the will. The trial was held and the jury returned its verdict that the will was invalid, which Goldstein challenges in a separate appeal. Following the trial, the District Court appointed Axvig as special administrator and personal representative of the estate.

¶9. On October 15, 1997, Axvig filed another motion alleging that Goldstein violated the District Court's December 10, 1996, order and to compel Goldstein to account for $46,942.55 he paid to himself from estate funds since May 12, 1997, without the court's authorization. The District Court, also on October 15, 1997, ordered Goldstein to appear on October 21, 1997, to "account for all payments which he made to himself or his law firm from estate funds and to provide any explanation which he c[ould], so as not to be required to immediately repay all such sums to the estate."

¶10. Early on October 21, 1997, Goldstein initiated a Chapter 13 bankruptcy proceeding on his own behalf, and later appeared before the District Court. The District Court rejected Goldstein's argument that the bankruptcy petition should stay the hearing, rejected Goldstein's explanation that checks made out from the estate where used to pay his office staff, and ordered Goldstein to produce his office billing records by 5:00 p.m. that day. The District Court's review of approximately $56,000 that Goldstein paid himself was taken under advisement, and a decision was stayed until Goldstein resolved his bankruptcy proceeding. Nevertheless, Goldstein did not produce his billing records by 5:00 p.m. on October 21, 1997.

¶11. On January 8, 1998, Goldstein filed an administrative claim against the estate in the amount of $3,744.66 for his work as personal representative. He later amended his claim to the amount of $4,004.41. On January 29, 1998, Goldstein filed a motion for settlement of fees and expenses on behalf of all agents and attorneys of the estate. His motion was accompanied by an affidavit generally describing the work he did for the estate and indicating that "thousands of dollars" were owing to him and his law firm. Axvig opposed Goldstein's motion.

¶12. On February 25, 1998, the United States Bankruptcy Court lifted the stay insofar as the pending probate matter, and later, on April 1, 1998, the Court dismissed Goldstein's bankruptcy proceeding; however, Goldstein still had not provided the court an accounting. The District Court on March 9, 1998, issued an order scheduling a conference to "review[] the status of this case and [to] expedit[e] the disposition of the various matters." The order specifically required the attorneys for the respective parties to attend.

¶13. The conference was held on April 14, 1998. Goldstein's attorney was at the conference, but Goldstein was not. At the start of the conference, Goldstein's attorney was asked to provide an accounting for the payments Goldstein made to himself and his law firm from estate funds. Goldstein's attorney responded that he did not have an accounting because the District Court's order gave him no notice that an accounting would be taken or that matters would be settled. Ultimately, Goldstein's attorney objected to going any further, which the District Court overruled. Goldstein's attorney also argued that since Goldstein was no longer the personal representative of the estate, he was no longer a party to the action, so the District Court did not have jurisdiction to enter an order against him.[1] On the same

basis, Goldstein's attorney stated that he would not pursue the motions and pleadings Goldstein previously filed. During a short recess, Judge McKittrick asked a deputy sheriff to find Goldstein and bring him to the hearing; however, the deputy sheriff could not find him.

¶14. Judge McKittrick entered an opinion and order on April 14, 1998, concluding that payments Goldstein made to himself and his law firm while Goldstein served as personal representative of Kenneth Axvig's estate were in violation of the court's December 10, 1996, order. He concluded that Goldstein breached his fiduciary duty as personal representative of the estate by not keeping any contemporaneous records to justify the payments he made. Goldstein was required to reimburse the Axvig estate $56,942.55. In addition, Goldstein's failure to reimburse the estate would be deemed in contempt of court and would cause an execution on his obligation in the same manner as a judgment, pursuant to § 25-13-204, MCA.

¶15. On April 29, 1998, the District Court issued an order scheduling a hearing in Great Falls on May 26, 1998. Among other things, the order required Goldstein to personally appear and "account to the Court for all actions he undertook regarding the above estate while acting as personal representative." The hearing was conducted as scheduled; Goldstein appeared but refused to testify and did not provide the court with an accounting.

¶16. Goldstein appeals the District Court's April 14, 1998, opinion and order.

ISSUE 1

¶17. Was Goldstein denied due process of law under the Montana Constitution?

¶18. Goldstein argues that he was not provided adequate notice and the opportunity to be heard when the District Court issued its April 14, 1998, order requiring him to reimburse the Axvig estate. Goldstein asserts that the District Court's order did not provide notice that the court intended to take up specific motions, entertain orders, impose liens, or enter a judgment against him. In addition, the order was sent only to his attorney, not to him. Thus, he argues that he was denied due process of law.

¶19. Goldstein cites *In re Marriage of Nordberg* (1995), 271 Mont. 328, 896 P.2d 447, to support his position. In *Nordberg*, we decided that the District Court failed to give

the appellant adequate notice and the opportunity to be heard when it executed a lien as a result of a conference involving a husband and a wife in a divorce preceding. In the District Court's order, it stated that a conference would be held "to address the format for the disposition of all pending mattes [sic]." *Nordberg*, 271 Mont. at 330, 896 P.2d at 448. During the conference, the court apparently asked the wife to submit a calculation of the amount due on the husband's obligation to her. Without holding any further proceedings, the court granted the wife a money judgment, which created a lien against the husband's property. We held that the District Court's scheduling order did not provide the husband adequate notice that the conference might result in a lien against him, nor was he given an opportunity to set forth evidence of the payments he already made on the obligation. *Nordberg*, 271 Mont. at 331, 896 P.2d at 449.

¶20. Article II, Section 17, of the Montana Constitution, states that "[n]o person shall be deprived of life, liberty, or property without due process of law." Due process of law refers to certain fundamental rights which require notice to be given and a hearing had before property may be taken away, or impressed with a lien. *See Great Northern Ry. Co. v. Roosevelt County* (1958), 134 Mont. 355, 362, 332 P.2d 501, 505. We recognize that procedural due process requires notice and an opportunity for hearing appropriate for the case. *See In re Adoption of K.L.J.K.* (1986), 224 Mont. 418, 421, 730 P.2d 1135, 1137 (quoting *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865).

¶21. We conclude that Goldstein received appropriate notice. Six months before he was ordered to reimburse the Axvig estate, Goldstein was instructed to appear on October 21, 1997, to account for the payments he made to himself and his law firm from estate funds. Goldstein was given another notice in the District Court's March 9, 1998, order after he failed to submit an accounting to the court. Unlike the order issued in *Nordberg*, in which the District Court stated that the upcoming conference was only to address the format for the disposition of all pending matters, the District Court's order to Goldstein stated that the conference would be held to review the status of the case and to expedite the disposition of the various matters. Certainly one of those matters was the court's pending order to produce the billing records which was actually pending since October 21, 1997. In his brief, Goldstein incorrectly interprets the District Court's March 9, 1998, order to mean that the parties would set a schedule to expedite the various matters. The order was void of any such language. Based on the two orders that Goldstein and his attorney received, we

conclude that Goldstein had ample notice that actions could be taken against him to cause him to reimburse the Axvig estate. The fact that Goldstein's attorney received the District Court's March 9, 1998, order instead of Goldstein, does not affect our decision.

¶22. Goldstein urges us not to consider the October 21, 1997, hearing as part of the notice he received because the hearing should have been stayed as a result of his bankruptcy proceeding. He also contends that the hearing was a result of ex parte meetings between Axvig's counsel and the District Court Judge, and that he had only two days to prepare for it. However, our decision does not rely entirely on the District Court Judge's orders pronounced during the October 21, 1997, hearing. Even before the hearing, by virtue of the court's order of October 15, 1997, Goldstein was given notice that he was to provide an accounting to avoid being required to repay the estate.

¶23. Goldstein's final argument is that at the April 14, 1998, conference, Axvig presented additional evidence of $10,000 that Goldstein paid to himself, to which Goldstein had no opportunity to respond. However, the record shows that the District Court Judge gave Goldstein's attorney the opportunity to respond and that these payments were introduced at the October 21, 1997, hearing as well. Goldstein had ample opportunity to account for them.

¶24. We conclude that Goldstein had six-months' notice and the opportunity to be heard. At the April 14, 1998, conference, the District Court Judge took extra measures to find Goldstein to allow him to be heard. Any lack of being heard was due to Goldstein's own failure to provide an accounting. We also recognize that the District Court, even after it entered its order of April 14, 1998, still invited Goldstein to account for his actions. The court's order of April 29, 1998, required Goldstein to appear before the court on May 26, 1998, and account for his actions. Although Goldstein appeared, he refused to testify or provide an accounting.

¶25. Given this history, we would be hard pressed, indeed, to conclude that Goldstein was denied due process of law under the Montana Constitution.

ISSUE 2

¶26. Should Axvig be awarded costs and fees?

**¶27. Axvig raised the issue of costs and fees pursuant to Rule 32, M.R.App.P., which provides that we may award damages to the prevailing party in an appeal that has been brought without substantial or reasonable grounds. Axvig raises the legitimacy of the grounds upon which Goldstein makes this appeal. Axvig also suggests that when Goldstein's attorney told the court at the April 14, 1998, conference that Goldstein did not intend on offering anything further in regard to outstanding filings and motions, Goldstein acquiesced to the court's orders; thus, he has no basis to make an appeal.**

**¶28. In *Bi-Lo Foods, Inc. v. Alpine Bank*, 1998 MT 40, ¶ 36, 287 Mont. 367, ¶ 36, 955 P.2d 154, ¶ 36, we stated:**

This Court does not readily impose sanctions for filing frivolous appeals. As a general rule, we impose sanctions in cases only where the appeal is entirely unfounded and intended to cause delay, or where counsel's actions otherwise constitute an abuse of the judicial system.

(Citations omitted.) Although Goldstein's arguments were not successful, we are not satisfied that his appeal was made in the absence of reasonable grounds. We also are not convinced that Goldstein intended to acquiesce to the District Court's orders. Thus, we decline to award sanctions against Goldstein under Rule 32, M.R.App.P.

**¶29. The District Court's order is affirmed.**

/S/ JIM REGNIER

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

Justice James C. Nelson concurs and dissents.

**¶30. I agree with our decision as to Issue Two; I disagree with our decision as to Issue One. Goldstein filed a bankruptcy petition on October 21, 1997, and, accordingly, the automatic stay took effect. Any proceedings which took place during the period of automatic stay are void, and, accordingly, the court simply could not have deemed the matter submitted on October 21, and then have proceeded on the basis of argument and testimony taken at the October 21 hearing. Goldstein's attorney objected to any proceedings on October 21, because the stay was in effect. Accordingly, I would reverse the April 14, 1998 order on the basis that any proceedings on October 21, were void. Those proceedings should be redone now that the bankruptcy has been dismissed.**

/S/ JAMES C. NELSON

1. [1]In the initial proceedings of this case, Judge John Warner recused himself and Judge Thomas McKittrick replaced him. Goldstein initiated a disqualification action against Judge McKittrick, over which Judge C.B. McNeil resided. On February 23, 1998, Judge McNeil denied Goldstein's request for disqualification, partly because Goldstein was no longer a party to Kenneth Axvig's estate since Ole Axvig was appointed as personal representative.