DA 13-0729

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 210

IN RE THE MARRIAGE OF:

RUSSELL DALE RINTOUL,

       Petitioner and Appellant,

   v.

KAREN ANN RINTOUL,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                  In and For the County of Yellowstone, Cause No. DR 12-0764
                  Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           George T. Radovich, Attorney at Law, Billings, Montana

       For Appellee:

           Jill Deann LaRance, LaRance & Syth, P.C., Billings, Montana

                              Submitted on Briefs:  July 2, 2014
                                    Decided:  August 5, 2014

Filed:

                                   Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Russell Rintoul (Russell) appeals from the Findings of Fact, Conclusions of Law, and Order entered by the Thirteenth Judicial District Court, Yellowstone County, dividing marital assets in his dissolution. The bulk of the parties' property was found to be either gifted to Karen Rintoul (Karen), or purchased with money inherited by Karen. Russell appeals from the court's decision to award Karen a significantly larger share of the marital estate.

¶2      We affirm, after addressing the following issues:

> *1.      Did the District Court err by distributing substantially all the gifted and inherited property received from Karen's family during the marriage to Karen without proper consideration of Russell's contributions to the family?*
>
> *2.      Should Karen be awarded attorney fees incurred in responding to this appeal?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      The parties were married for 38 years before filing a petition for dissolution in 2012. The parties owned and operated an automobile repair business together for a significant portion of the marriage, which was sold in 2003. Russell is a mechanic, while Karen works as a bookkeeper. She does not have other specialized training. During the years they operated the repair business, both parties worked long hours, making a combined annual salary of approximately $40,000. However, all this income was reported under Russell for tax purposes.

¶4      The District Court found that the parties' combined salary would have supported them, but would not have permitted accumulation of the substantial assets in the marital

2

estate. It made specific factual findings that the "vast majority" of the parties' assets had either been gifts from Karen's family or purchased with money Karen inherited. The court also found that during the course of the marriage, the parties used money from Karen's trust fund to pay living expenses.

¶5 Following a bench trial on September 19, 2013, the District Court entered its Findings of Fact, Conclusions of Law, and Order (Order) distributing the marital assets and debts between the parties. A Decree of Dissolution of Marriage was entered on October 17, 2013, incorporating the Order. The Order distributed to Karen approximately three-quarters of the marital estate. Further facts will be included below where necessary.

## STANDARD OF REVIEW

¶6 We review a district court's findings of fact pertaining to the division of martial assets to determine if they are clearly erroneous. *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28. "If the court's findings are not clearly erroneous, we will reverse only if the district court abused its discretion." *Tummarello*, ¶ 21. A district court has "broad discretion to apportion a marital estate in a manner equitable to each party under the circumstances." *Tummarello*, ¶ 23.

## DISCUSSION

¶7 *1. Did the District Court err by distributing substantially all the gifted and inherited property received from Karen's family during the marriage to Karen without proper consideration of Russell's contributions to the family?*

¶8 Russell's sole claim of error is that "[t]he District Court judge made an error of law when he failed to consider [*In re Marriage of Funk*, 2012 MT 14, 363 Mont. 352, 270 P.3d 39] when making his decision as to the property distribution." Russell argues that under

3

*Funk*, it "no longer matters if the parties acquired property through inheritance or with the help of one of the parties' family." Thus, he claims he should have been given an equal share of all marital property, including the property gifted to or inherited by Karen.

¶9 Russell's claim of error is discounted by even a cursory review of the record. The District Court explicitly directed the parties to address *Funk* and how it related to the facts of this case prior to trial, and again allowed the parties to do so in post-trial briefing at Russell's request. Moreover, though the Order does not specifically cite to *Funk*, the document reveals that the court did precisely what we required in *Funk*—consideration of each of the statutory factors relating to gifted or inherited property and entry of property-specific findings of fact underlying the equitable apportionment of the property. *Funk*, ¶ 34.

¶10 In *Funk*, a husband challenged the district court's distribution of property awarding the wife a portion of the value of real property he inherited. Noting that there had been conflicting results in our prior decisions as to whether inherited or gifted property was to be included in the marital estate in dissolution proceedings, we clarified that a court is required to "equitably apportion between the parties all assets and property of either or both spouses, regardless of by whom and when acquired." *Funk*, ¶¶ 18-19. However, we recognized that § 40-4-202(1), MCA, supplied "the particular matters to be considered in dividing pre-acquired, gifted or inherited property." *Funk*, ¶ 16. Section 40-4-202(1), MCA, provides that for such property, the court must consider the contributions of the other spouse to the marriage including the nonmonetary contribution of a homemaker, the extent to which such contributions have facilitated the maintenance of the property, and whether or not the property division serves as an alternative to maintenance. Due to the specific statutory

4

factors to be considered in regard to pre-acquired, gifted, or inherited property, we held that "[t]he court's decision with respect to this category of property must affirmatively reflect that each of these factors was considered and analyzed, and must be based on substantial evidence." *Funk*, ¶ 19. We remanded the case to the district court because the decision to distribute a portion of inherited property to the other spouse did not reflect specific consideration of any of these factors. *Funk*, ¶¶ 23-24. We also noted that "[i]t will be incumbent upon the parties to provide full disclosure of all property." *Funk*, ¶ 34.

¶11 Contrary to Russell's argument that proper consideration of *Funk* requires "that the gifted and inherited property be *equally* apportioned between the parties" (emphasis added), nothing in that decision directs that gifted and inherited property be equally apportioned. Such an application would essentially abrogate the requirements of § 40-4-202(1), MCA, and move Montana toward a *de facto* community property state. Our decision in *Funk* only clarifies that pre-acquired, gifted, or inherited property is to be included in the martial estate when determining property distribution, though with specific statutory factors to be considered when determining an equitable distribution of the estate. We specifically noted that "[t]he party claiming ownership of the pre-acquired, bequested or gifted property is entitled to argue that it would be equitable to award him or her the entirety of such property." *Funk*, ¶ 19.

¶12 Russell premises an argument that he contributed to the improvement and upkeep of the subject property upon several asserted facts, and concludes therefrom that the property distribution was inequitable, but these asserted facts were not found by the District Court, and Russell has not challenged any of the court's findings as clearly erroneous. We will not

5

reweigh the evidence, judge the credibility of witnesses, or consider whether the evidence would support a different decision than the one reached by the court. *In re Estate of Bradshaw*, 2001 MT 92, ¶ 11, 305 Mont. 178, 24 P.3d 211.

¶13 The primary assets were two pieces of real property—the family home (Coburn Property) and a vacation property (Luther Property). The Coburn Property was gifted to the couple by Karen's father and had a current value of $190,000. This home is located approximately one mile from Karen's father and step-mother, on part of a large ranch purchased by Karen's father. The Luther Property was also gifted to the couple by Karen's father, and had a current value of $525,000. This property had been purchased by Karen's father decades earlier and Karen's grandfather lived on the property until his death, when Karen's father gifted it to Karen in 1995. A neighbor had done much of the upkeep of the property over the years, and Karen's father and brother paid for a fence, gate, and pond to be built on the property. Karen used money she inherited from her mother to purchase an Airstream trailer which still remains on the property. The court determined that the couple made few contributions to the property, but did use joint funds to deliver electricity to the property. The court distributed both properties to Karen.

¶14 Among the other assets were four retirement accounts. The court found that the parties only contributed $41,000 of martial funds to the retirement accounts, while over $120,000 came from Karen's inherited funds. The court distributed the individually-held accounts to the respective parties, with Karen's account balance being slightly larger than Russell's.

¶15     The District Court also noted that several assets were sold or liquidated by Russell following the filing of the petition for dissolution, in violation of the Summons and Restraining Order, and the proceeds were kept by Russell. Most of the values received were unknown to the court at the time of trial, but the court estimated the amounts and attributed them to Russell's portion of the divided assets. The court also noted that Russell did not formally disclose at least one bank account in his name, the account balance of which was not known at the time of trial. Despite Russell's failure to disclose this account and its value, the court did not estimate any amount to attribute to Russell for this account.

¶16     The court considered the three factors set out in § 40-4-202(1), MCA, with regards to the gifted or inherited property, and concluded that neither party was a homemaker, but Karen "contributed the most nonmonetary contributions to the marriage"; Russell made some contributions to the properties through his labor and general upkeep; and maintenance was not an issue as neither party had asked for it. Among the other reasons for the court's determination of the equity of the distribution was that Russell has a trade and the ability to work and make more than Karen in the future; the parties' income during the marriage was accounted for under Russell, giving him approximately 60% more credits toward future Social Security than Karen; Russell was currently fighting for ancestral land in Hawaii, where he moved after the separation, and any land interest he received in Hawaii was awarded to him; and that Karen had family ties and sentimental reasons for keeping the real property, which she planned on retaining in the family, while Russell only sought to liquidate and receive cash. After considering all these unique factors, the court determined it was equitable to give Karen the majority of the marital estate. However, it determined that equity

7

required an "equalization payment" of $50,000 to Russell in consideration of the long duration of the marriage and Russell's contributions to the maintenance of the gifted properties.

¶17     Based on the record, it is clear that the District Court properly considered the factors in § 40-4-202(1), MCA, with regard to the gifted or inherited property in this case and made specific findings of fact relating to the property and the equitable distribution of the estate. We conclude there was no error in the facts found by the District Court, and that the court did not abuse its discretion in its distribution of the marital estate.

¶18     2.      *Should Karen be awarded attorney fees incurred in responding to this appeal?*

¶19     Karen asks us to award attorney fees incurred in responding to this appeal as sanctions pursuant to M. R. App. P. 19(5). We may award sanctions, including costs, attorney fees, or other monetary or non-monetary penalty, to the prevailing party in an appeal if the appeal is "determined to be frivolous, vexatious, filed for purposes of harassment or delay, or taken without substantial reasonable grounds." M. R. App. P. 19(5). However, "[t]his Court does not readily impose sanctions for filing frivolous appeals. As a general rule, we impose sanctions in cases only where the appeal is entirely unfounded and intended to cause delay, or where counsel's actions otherwise constitute an abuse of the judicial system." *Bi-Lo Foods, Inc. v. Alpine Bank*, 1998 MT 40, ¶ 36, 287 Mont. 367, 955 P.2d 154 (citations omitted).

¶20     As noted above, the record clearly demonstrates that the District Court did exactly what Russell faults the court for failing to do—consider *Funk*. Russell knew about the court's consideration of *Funk* because the issue was discussed before trial and he specifically

8

asked the court for the opportunity to submit post-trial briefing on the effect of that case. For Russell to argue that the District Court failed to consider or apply *Funk*, without referencing this record, is simply misleading. Russell's arguments regarding *Funk* and the distribution of gifted or inherited property are clearly unsupported by the specific instructions provided in that case. Finally, Russell's briefing includes significant mischaracterizations or omissions of fact that failed to challenge the District Court's findings of fact as clearly erroneous. Russell cites to his own trial testimony regarding facts not found by, or contrary to those found by, the court.

¶21 We decline to impose sanctions under Rule 19(5) because this case itself provided a reasonable basis to challenge the District Court's application of *Funk* and the equity of the property distribution. However, the manner in which the case was argued very nearly moved our discretion to impose sanctions. Appeals to this Court must be supported by an accurate presentation of authority, M. R. App. P. 12(1)(f), and accurately represent the record. Advocating for a desired result is required and expected, but parties must stop short of advancing arguments that are a misrepresentation of the record or of case holdings.

¶22 Affirmed.

/S/ JIM RICE

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER

9