Justice James Jeremiah Shea delivered the Opinion of the Court.
***437 ¶1 Appellant Little Big Warm Ranch, LLC (LBWR) appeals the January 29, 2018 Order of the Montana Water Court, Lower Missouri Division, Beaver Creek Tributary of Milk River-Basin, denying its Motion to Reopen Proceedings and its request to substitute as an objector. We address the following issue:
Whether the Water Court erred in denying Little Big Warm Ranch's Motion to Reopen the case and in denying Little Big Warm Ranch's Motion to Substitute Objector.
¶2 We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 This case involves two water rights from Big Warm Springs Creek and Little *344 Warm Springs Creek: Claim 40M 168788-00 for stockwater, and Claim 40M 168789-00 for irrigation. Cheri and Willie Doll (the Dolls) and LBWR are the current adjacent landowners and parties to ***438 this litigation. The water rights at issue have been the subject of litigation dating back to the 1990s.[1] On June 9, 2000, the District Court certified the underlying water rights to the Water Court for determination. In 2002, the presiding Water Master issued a Draft Water Master's Report (Draft Report).
¶4 In 2005, LBWR predecessors in interest, Lori and Steven Knudsen, sold their land and appurtenant water rights (the Property) to Leslie Greene and John Dudley (Greene/Dudley). On January 23, 2009, an "Interim Water Management Agreement" between the Dolls and Greene/Dudley was filed with the Phillips County District Court. On January 19, 2010, Leslie Greene filed objections to the Dolls' water rights in Claim 40M 168788-00[2] and Claim 40M 168789-00.[3] Greene's objections stated: "The Draft [ ] Report for WC-2000-05 and WC-2000-06 finds this claim to be invalid. The claim should be terminated or withdrawn." On June 13, 2013, Greene/Dudley sold the Property to Carthel Finch, Debbie Finch, W.G. Dement, and Jason Dement (Finch/Dement). Finch/Dement did not attempt to substitute as an objector, and Greene remained the objector in the case. On August 19, 2013, the Water Court issued "Post-Decree Abstracts of Water Right Claim[s]."
¶5 Finch/Dement and the Dolls negotiated a settlement agreement (Settlement Agreement) resolving the Water Court cases, including Cases 40M-171 and 40M-238. The Settlement Agreement stated, in relevant part:
• The certified Water Court cases, WC-2000-05 and WC-2000-06, would be discontinued and dismissed
• The parties would dismiss or withdraw any objections in Water Court as to the Subject Water Rights ***439 • The Draft Report would not be used by either party in any judicial or administrative proceeding involving any of them as authority, precedent, a decision, or a determination of any issue involving the water rights
• The Dolls' stock and irrigation claims would be decreed as set out in the post-decree abstracts issued by the Water Court on August 19, 2013.
¶6 In 2014, Finch/Dement was in the process of selling the Property to LBWR. On October 22, 2014, Finch/Dement sent a copy of the Settlement Agreement to LBWR's counsel. On December 3, 2014, the Dolls signed the Settlement Agreement prior to the Property sale to LBWR. On December 11, 2014, all members of LBWR signed an Acknowledgment of the Settlement Agreement as part of the closing on the Property. On December 15, 2014, Finch/Dement sold the Property to LBWR. Finch/Dement signed the Settlement Agreement shortly afterwards, on December 23, 2014. On June 3, 2015, the Water Court held a scheduling conference on Case 40M-171 and Greene's objections. A LBWR co-manager attended the scheduling conference. Greene did not attend. The Dolls moved for dismissal of Greene's objections. The LBWR co-manager made no objection to the dismissal of Greene's objections. The Water Court entered a default against Greene and ordered Greene to show cause why all of her objections to the claims should not be dismissed. On October 8, 2015, the Water Court dismissed Greene's objections in 40M-238 after Greene again failed to appear. On October 9, 2015, Greene/Dudley filed a Notice of Disclaimer, disclaiming interest in eleven water *345 rights cases where Greene/Dudley had filed objections or notice of intent to appear; seven of those cases involved the Dolls and three directly involved LBWR. On November 14, 2016, LBWR and the Dolls filed a Joint Status Report with the Water Court addressing five water claims, including 40M-238, stating both parties "agree that they do not wish to modify any of their currently filed water claim rights." LBWR and the Dolls also informed the District Court both cases had settled and asked for dismissal. The District Court withdrew its prior orders certifying the underlying water rights and dismissed both cases without prejudice.
¶7 On November 29, 2017, LBWR filed a Motion to Reopen Proceedings and a Motion to Substitute Objector for Greene's Interest in Cases 40M-171 and 40M-238.[4] LBWR argued that the Water Master ***440 "failed to make efforts to notice [LBWR] and afford it an opportunity to substitute itself for Greene." On January 22, 2018, the Water Court held oral argument on LBWR's Motion to Reopen Cases 40M-171 and 40M-238. During oral argument, the Water Court noted it was under no obligation to notify LBWR of pre-existing objections. The Water Court further noted that, as a purchaser, LBWR could go to the Water Court record and identify objections to the water rights being purchased or objections filed by a predecessor in interest, and that such information was readily available online. On January 29, 2018, the Water Court denied LBWR's Motion to Reopen and to Assume Objector Greene's Interest. LBWR appeals.
STANDARDS OF REVIEW
¶8 This Court reviews Water Court decisions using the same standards applied to district court decisions. Teton Coop. Reservoir Co. v. Farmers Coop. Canal Co. , 2018 MT 66, ¶ 19, 391 Mont. 66, 414 P.3d 1249. We review a Water Court's evidentiary rulings for an abuse of discretion. Busta v. Columbus Hosp. Corp ., 276 Mont. 342, 353, 916 P.2d 122, 128 (1996). We review the Water Court's findings of fact to determine if they are clearly erroneous. Skelton Ranch, Inc. v. Pondera Cty. Canal & Reservoir Co. , 2014 MT 167, ¶ 26, 375 Mont. 327, 328 P.3d 644. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if after reviewing the entire record, this Court is left with the definite and firm conviction that a mistake was made. Skelton Ranch, Inc. , ¶ 27. We review Water Court conclusions of law for correctness. Nelson v. Brooks , 2014 MT 120, ¶ 28, 375 Mont. 86, 329 P.3d 558.
¶9 We review a Water Court's decision to grant a motion for substitution for an abuse of discretion. See Reilly v. Citizens State Bank , 251 Mont. 155, 158-59, 822 P.2d 1088, 1089 (1991) ( M. R. Civ. P. 25(c)"does not mandate substitution" and substitution is a "matter of convenience within the district court's discretion depending on the exigencies of the situation...."). We review a Water Court's ruling on ***441 a Motion to Reopen for an abuse of discretion. See Essex Ins. Co. v. Moose's Saloon, Inc. , 2007 MT 202, ¶¶ 16, 19, 23, 338 Mont. 423, 166 P.3d 451. This Court's review of due process claims is plenary. State v. Schaff , 2011 MT 19, ¶ 7, 359 Mont. 185, 247 P.3d 727.
DISCUSSION
¶10 Whether the Water Court erred in denying Little Big Warm Ranch's Motion to Reopen the case and in denying Little Big Warm Ranch's Motion to Substitute Objector.
¶11 Water rights are property rights, and adjudication of property rights *346 requires that a property owner be afforded due process. Harrer v. N. Pac. Ry. Co. , 147 Mont. 130, 134-35, 410 P.2d 713, 715 (1966) ; Mont. Trout Unltd. v. Beaverhead Water Co. , 2011 MT 151, ¶ 71, 361 Mont. 77, 255 P.3d 179 (J. Rice, dissenting); Mont. Const. art. IX, § 3 (4) (providing for an orderly process for adjudicating existing water rights); Title 85, chapter 2, MCA. Due process mandates notice and the opportunity to be heard prior to modification of those rights. City of Missoula v. Mt. Water Co. , 2016 MT 183, ¶ 25, 384 Mont. 193, 378 P.3d 1113 ; Steab v. Luna , 2010 MT 125, ¶ 22, 356 Mont. 372, 233 P.3d 351 ; Mathews v. Eldridge , 424 U.S. 319, 333, 348, 96 S.Ct. 893, 902, 909, 47 L.Ed.2d 18 (1976). "Notice must be reasonably calculated to inform parties of proceedings [that] may directly and adversely affect their legally protected interests." Steab , ¶ 22 (internal citations omitted). Actual notice is explicit information of a fact. Section 1-1-217(1)(a), MCA. Constructive notice is notice imputed by law when a party has actual notice of circumstances that would put a prudent person on inquiry as to a specific fact. Section 1-1-217, MCA.
¶12 Water rights are often appurtenant to the land on which they are used. Axtell v. M.S. Consulting , 1998 MT 64, ¶ 27, 288 Mont. 150, 955 P.2d 1362 (citing MacLay v. Missoula Irrigation Dist. , 90 Mont. 344, 353, 3 P.2d 286, 290 (1931) ). Generally, appurtenant water rights are included with land transfers, unless reserved. Section 85-2-403(1), MCA ; MacLay , 90 Mont. at 353, 3 P.2d at 290. New owners of land with water rights in a Water Court case become a party to the case through Montana's change of water right ownership statutes. See §§ 85-2-403, 85-2-421-424, MCA. However, the Water Court does not independently monitor land or water right transactions and does not know when a water right has been transferred, unless it receives notice from the Department of Natural Resources and Conservation (DNRC). See §§ 85-2-421-426, MCA.
¶13 Substitution of objectors is permissive and is controlled by M. R. Civ. P. 25(c), which states in relevant part:
***442 Transfer of interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party....
Reilly , 251 Mont. at 158-59, 822 P.2d at 1089. Although the Water Court is governed by the Montana Rules of Civil Procedure, W. R. Adj. R. 2(b); In re Crow Water Compact , 2015 MT 217, ¶ 23, 380 Mont. 168, 354 P.3d 1217, the substitution of parties in a Water Court proceeding differs from substitution in a civil action in a district court, see M. R. Civ. P. 25(c). In Water Court, substitution of a party depends on whether a transferee is seeking to participate as a claimant (a water right owner) or as an objector. DNRC's water right ownership process makes substitution of a claimant automatic in the Water Court,[5] whereas to substitute oneself for an objector, a party must learn of the case for which the objection has been consolidated and then file the appropriate motion for substitution with the Water Court. In re Yellowstone River , 1995 WL 18022725, at *3, 1995 Mont. Water LEXIS 4, at *8 ("[i]t is the responsibility of a party, or its successor, to notify the [Water] Court of a transfer of interest.... The vehicle for an objector is a Motion for Substitution of Objector...."); § 85-2-403, MCA ; see also § 85-2-233, MCA (setting out the process for filing objections to temporary or preliminary decrees and the notice requirements). The Water Court holds hearings on the issues raised by the objections and issues a final decree. W. R. Adj. R. 1(b); §§ 85-2-231-235, MCA.
¶14 In this case, the Water Court determined that LBWR was not entitled to substitute itself for Greene as an objector to the Dolls' water rights in Cases 40M-171 and 40M-238, and it denied LBWR's request for substitution and its Motion to Reopen. The Water Court disagreed with LBWR's assertion that it had no obligation to protect itself, *347 and that protection of LBWR's water rights was the responsibility of the Water Court or another party. Further, the Water Court concluded that LBWR's conduct showed it had actual notice of Greene's objections, "multiple opportunities to protect its interests, and ample time to act on those opportunities." These opportunities included: (1) being a prospective purchaser of the Property; (2) when LBWR closed on the Property and all LBWR members signed an Acknowledgement detailing the existence of a water rights agreement between the Dolls and Finch/Dement; (3) when LBWR participated in other Water Court ***443 cases involving Greene and Basin 40M; (4) when LBWR's counsel received Greene's Notice of Disclaimer of her objections but waited two years before filing its Motion to Reopen Cases 40M-171 and 40M-238; and (5) when LBWR appeared in proceedings in Case 40M-238 after Greene's objection was dismissed and took no action to have that objection reinstated.
¶15 LBWR argues the Water Court erred in denying LBWR's Motions to substitute itself as objector in Greene's water rights claims and to reopen the cases involving those claims. LBWR argues its due process rights were violated when LBWR did not receive notice that its property rights were at stake in a legal proceeding and when LBWR was not afforded an opportunity to assume Greene's objections to the Dolls' water rights. LBWR also argues the Water Court erred by making factual findings without allowing the parties to present evidence and refusing to rule on LBWR's evidentiary objections. Finally, LBWR argues it is entitled to be substituted as the real party in interest under M. R. Civ. P. 17.
¶16 The Dolls counter LBWR cannot obligate the Water Court or the Dolls to notify LBWR of its right to substitute itself for Greene's interest. The Dolls also counter that LBWR had actual and constructive notice of Greene's objections and that LBWR took an active role in other cases involving the Dolls' water rights and Greene's objections. Consequently, LBWR was not deprived of due process, the Water Court did not err, and the Water Court's conclusions of law were correct. We agree.
¶17 LBWR participated in the Water Court Proceedings, knew about the Settlement Agreement, and ratified the Settlement Agreement. LBWR members signed an Acknowledgment of the Settlement Agreement as part of the closing on the Property. Even if the Settlement Agreement was not "effective" when LBWR closed on the Property, every member of LBWR represented they had reviewed and approved the Settlement Agreement when they signed the Acknowledgment, and LBWR members ratified the Settlement Agreement with their decision to close on the Property. The Water Court correctly concluded any argument that LBWR lacked ample opportunity to challenge the Dolls' water rights was not credible. Moreover, LBWR clearly had actual and constructive notice of Greene's objections evinced by the contents of the Acknowledgment and Settlement Agreement and LBWR's participation in other Water Court ***444 proceedings, including the scheduling conferences.[6] See § 1-1-217, MCA. LBWR also had constructive notice. As the Water Court also pointed out, objector information was readily available online at LBWR's disposal. See § 1-1-217, MCA.
¶18 The Water Court also correctly concluded it was under no obligation to notify *348 LBWR that it should file a motion to substitute itself for Greene's objections. See M. R. Civ. P. 25(c). As a purported objector, LBWR had a responsibility to learn of the status of any objection and to file the appropriate motion for substitution with the Water Court. See In re Yellowstone River , 1995 WL 18022725, at *3, 1995 Mont. Water LEXIS 4, at *8. LBWR concedes that substitution of an objector in a water rights claim does not occur automatically; the burden is on the successor who wishes to become an objector to file a motion for substitution. See In re Yellowstone River , 1995 WL 18022725, at *3, 1995 Mont. Water LEXIS 4, at *8.
¶19 LBWR's conduct further belies its claims that the Dolls and the Water Court were obligated to protect LBWR's interests. LBWR attended scheduling conferences and, rather than pursuing Green's objections, LBWR actively ignored or dismissed them. LBWR acted as if the Settlement Agreement were binding upon it and represented to the Water Court and the District Court that it was satisfied with the status of the water claims. LBWR's participation in Water Court proceedings demonstrates an awareness of its obligations and a deliberate decision to discontinue pursuit of the objections. LBWR cannot now substitute itself as an objector for Greene-a party who disclaimed any interest as an objector in October 2015. The Water Court did not err and did not abuse its discretion when it denied LBWR's Motion to Reopen and denied LBWR's request to substitute itself for Greene's objections. See ***445 Reilly , 251 Mont. at 158-59, 822 P.2d at 1089 ; M. R. Civ. P. 25(c).
¶20 LBWR's argument that it is entitled to be substituted as the real party in interest under M. R. Civ. P. 17 was not raised before the Water Court and cannot be considered for the first time on appeal. See State v. Johnson , 2008 MT 227, ¶ 26, 344 Mont. 313, 187 P.3d 662.
¶21 Finally, the Dolls' request they be awarded attorney fees incurred in this appeal on the grounds that LBWR's appeal is without merit. The Dolls argue LBWR's appeal was not made in good faith based on the conclusions of the Water Court, finding: (1) LBWR made assertions that do not have credible evidentiary support; (2) LBWR cannot reasonably claim it was unaware of the Settlement Agreement; and (3) LBWR knew or should have known of the Settlement Agreement before closing and certainly knew about it after closing. LBWR counters it appealed the Water Court's Order on several reasonable grounds and has done so in good faith.
¶22 M. R. App. P. 19(5) provides that this Court may "award sanctions to the prevailing party in an appeal ... determined to be frivolous, vexatious, filed for the purpose of harassment or delay, or taken without substantial or reasonable grounds." In determining whether an appeal is frivolous and unreasonable, we assess whether the arguments were made in good faith. Wolf's Interstate Leasing & Sales, L.L.C. v. Banks , 2009 MT 354, ¶ 13, 353 Mont. 189, 219 P.3d 1260 (citing Sorenson v. Massey-Ferguson, Inc. , 279 Mont. 527, 531, 927 P.2d 1030, 1033 (1996) ). Such sanctions are the exception, and this Court will only impose sanctions "where the appeal is entirely unfounded and intended to cause delay, or where counsel's actions otherwise constitute an abuse of the judicial system." Bi-Lo Foods v. Alpine Bank , 1998 MT 40, ¶ 36, 287 Mont. 367, 955 P.2d 154 (internal citations omitted); Rintoul v. Rintoul , 2014 MT 210, ¶ 19, 376 Mont. 167, 330 P.3d 1203. Here, while we have rejected LBWR's arguments, its "contentions were arguable and we cannot conclude they were made in the absence of good faith." See Banks , ¶ 13. We conclude an award of attorney fees under M. R. App. P. 19(5) is not appropriate in this case.
CONCLUSION
¶23 The Water Court did not err when it denied LBWR's Motion to Reopen Cases 40M-171 and 40M-238 and when it denied LBWR's request for substitution in those cases. We affirm.
We Concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.
JIM RICE, J.

See District Court Cause No. DV 93-050, Doll v. Knudsen , and District Court Cause No. DV 95-031, Knudsen v. Doll . The District Court, in both cases, certified the underlying water rights to the Water Court for determination. See § 85-2-406, MCA. The District Court cases DV 93-050 and DV 95-031 were consolidated into two water court cases: WC-2000-05 and WC-2000-06, collectively captioned In the Matter of Certain Water Rights of Doll and Knudsen . On December 6-8, 2000, Senior Water Master Katheryn Lambert held a hearing, which culminated in the issuance of the Draft Water Master's Report.

The Dolls' stockwater claim and Greene's objection were consolidated into Case 40M-171.

The Dolls' irrigation claim and Greene's objection were consolidated into Case 40M-238.

The Water Court treated LBWR's Motion to Reopen as a Motion for Substitution. The Water Court concluded this was the proper motion because LBWR's Motion to Reopen Proceedings and Assume Objector Greene's Interest did not reference M. R. Civ. P. 25(c), but LBWR moved for substitution under M. R. Civ. P. 25(c) during oral argument after the Water Court asked:
[D]oes a purchaser of real estate with pertinent water rights automatically become an objector or succeed to any objections filed by its predecessors, or does it need to pursue the substitution procedure in [M. R. Civ. P.] 25(c) ? Because the concern, honestly, I have about your [M. R. Civ. P.] 55 and 60 argument is that it presumes that [LBWR] is a party to this proceeding....

Parties to the transaction still bear the burden of providing notice to the Water Court of the transfer of interest. Section 85-2-424, MCA ; In re Yellowstone River , 1995 WL 18022725, at *3, 1995 Mont. Water LEXIS 4, at *8, 1995 ML 105 (Oct. 2, 1995).

LBWR also argues the changes between the Interim Agreement and the ultimate Settlement Agreement further evinces a deprivation of LBWR's due process rights. However, the Draft Report was never officially adopted, and the Interim Agreement between the Dolls and Dudley/Greene included a provision preserving existing rights, stating in relevant part: "This Interim Agreement is without prejudice to any of the parties' rights. ... In any subsequent proceedings they shall be restored to the same position as they were in immediately prior to when they agreed to this Interim Agreement." The Interim Agreement expired on September 7, 2010. The 2014 Settlement Agreement included provisions that "the [Draft Report] ... shall [not] be entered as a decision or decisions by the Water Court in those cases or any other proceedings between or involving them as parties." And, "irrespective of the final disposition of the [Draft Report] ... in the Water Court, neither of [the parties] will assert, allege, contend, argue, or otherwise use those documents and the analysis contained therein in any other judicial or administrative proceeding ... involving the Subject Water Rights."