FILED

10/20/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0051

DA 20-0051

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 266N

IN RE THE MARRIAGE OF:

SUSAN RAE WILLIAMS,

       Petitioner and Appellee,

  and

JERRY MAX WILLIAMS,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
                In and For the County of Park, Cause No. DR-2010-58
                Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Karl Knuchel, Karl Knuchel, P.C., Livingston, Montana

       For Appellee:

           Katie Green, Poore, Roth & Robinson, P.C., Butte, Montana

                        Submitted on Briefs:  August 26, 2020

                                 Decided:  October 20, 2020

Filed:

                            _____
                                   Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Respondent and Appellant Jerry Max Williams (Max) appeals the July 26, 2019 Findings of Fact, Conclusions of Law and Order, the October 17, 2019 Order and Judgment Regarding Arrearages and Contempt, and the November 4, 2019 Supplemental Judgment for Attorney Fees, all issued by the Sixth Judicial District Court, Park County. This series of orders held Max in contempt for failing to pay child support and ordered him to pay Petitioner and Appellee Susan Rae Williams (Susan) a total of $28,813.03, as well as $3,710.17 in attorney fees. We affirm.

¶3 Max and Susan were married in 1992. During their marriage, Max and Susan had three children: A.W., born in 1995; E.W., born in 1999, and D.W., born in 2001. In 2010, Max and Susan filed a Joint Petition for Dissolution. On June 18, 2010, the District Court issued its Findings of Fact, Conclusions of Law and Final Decree of Dissolution (Final Decree), which adopted the petitioner's Final Parenting Plan. The Final Decree further provided that each party would be "responsible for 50% of all medical expenses of the minor child(ren), including the costs of the premium for coverage, all co-payments and deductibles required for coverage, and any uncovered medical expenses." On August 9,

2

2010, the State of Montana Department of Public Health and Human Services Child Support Enforcement Division (CSED) entered an order requiring that Max to pay $246 per month per child, for a total of $738 per month. In addition, CSED ordered Max to pay a total of $2952 for the months of April 2010 through July 2010.

¶4 In August 2010, Susan and the children moved to Oregon. On November 30, 2010, after court-ordered mediation, the parties filed a Stipulation for Amendment of Parenting Plan (Stipulation), which the District Court approved in its December 2, 2010 Order Approving Stipulation for Amendment of Parenting Plan. Relevant here, the Stipulation provided that, rather than paying the $738 per month in child support as calculated by CSED, Max would pay Susan $500 per month in child support, as well as his $3000 child support arrearage, in addition to "one-half the cost of reasonable fees associated with extracurricular activities and extraordinary expenses for the children." The Stipulation provided that:

> In the event any fee exceeds $250.00, [Susan] shall seek [Max's] permission prior to the fee being incurred. It is the understanding and intention of the parties that the fees to which this provision applies would include camps, school-related trips, athletic fees and equipment, school supplies, fees and clothing, and other similar fees and expenses.

¶5 On February 6, 2012, Susan filed a Motion for Warrant of Contempt, alleging Max had "failed to make child support and other payments as required by the parties' amended parenting plan." Contemporaneously with her Motion for Warrant of Contempt, Susan filed the Affidavit of Susan R. Williams Re: Financial Obligations, which stated Max had not paid his $500 per month child support obligation for October and November 2010,

3

October, November, and December 2011, and January 2012. In addition, Susan's affidavit alleged Max had not paid his one-half share of the children's $8,554.16 in incidental expenses for the period from July 28, 2010, through January 8, 2012, or his one-half share of $3,016 in orthodontic expenses for one of the children. On March 1, 2012, the District Court entered an Order which required Max to resume child support payments in the amount of $500 per month; to pay an additional $250 per month towards his arrearage of $4,000; and to pay $50 per month towards his share ($1,508) of the orthodontic bill. The District Court's Order further stated that "[t]he nature and extent of incidental charges respondent may be liable for will be determined at a later time." The Order required Max's payments to "continue until all arrearages and past due incidental charges and medical expenses are paid." On March 5, 2012, Susan filed a Notice of Filing of Itemized Statements of Incidental Costs, which provided a list of the monthly incidental bills she had been sending Max.

¶6      On June 4, 2012, Susan filed a Second Motion for Warrant of Contempt, alleging Max was delinquent in his payments as required by the District Court's March 1, 2012 Order, along with the Affidavit of Susan R. Williams Re: Periodic Payments. On June 5, 2012, the District Court issued a Warrant of Contempt, which set a hearing for July 6, 2012. There is nothing in the record which reflects what happened as a result of this hearing.[1] On

---

[1] We have not been provided a transcript of this hearing and the District Court record does not reflect any order being entered after the hearing.

4

February 19, 2019, Susan filed a Petition for Contempt (Failure to Follow Parenting Plan), along with the Affidavit of Susan Williams Re: Financial Obligations, alleging Max owed $3,908.08 in medical payments and $27,068.77 in incidentals. On June 24, 2019, the District Court held a hearing on the Petition for Contempt, at which both Susan and Max testified.

¶7     Following the hearing, the District Court issued its Findings of Fact, Conclusions of Law and Order, Order and Judgment Regarding Arrearages and Contempt, and Supplemental Judgment for Attorney Fees, which ultimately held Max in contempt and ordered him to pay Susan a total of $28,813.03, as well as $3,710.17 in attorney fees. Max appeals. We restate the issues on appeal as follows: (1) whether the District Court acted within its jurisdiction and correctly concluded Max was in contempt of the court's orders; and (2) whether the Stipulation was inequitable and unenforceable.

¶8     "A party may appeal a contempt judgment or order in a family law proceeding only when the judgment or order appealed from includes an ancillary order that affects the substantial rights of the parties involved." Section 3-1-523(2), MCA. Under the family law exception, we review contempt orders to determine whether the district court acted within its jurisdiction, and if so, whether the evidence supports the findings of the court. *Lee v. Lee*, 2000 MT 67, ¶ 19, 299 Mont. 78, 996 P.2d 389. We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine if they are correct. *In re Marriage of Kesler*, 2018 MT 231, ¶ 15, 392 Mont. 540, 427 P.3d 77 (citations omitted). We review an award of attorney fees to determine

whether the court abused its discretion. *In re Marriage of Mease*, 2004 MT 59, ¶ 57, 320 Mont. 229, 92 P.3d 1148.

¶9 In the present case, Max is appealing a series of orders which held him in contempt and ordered him to pay both $28,813.03 in child support pursuant to the Stipulation and $3,710.17 of Susan's attorney fees incurred in bringing the third contempt motion. The District Court's contempt orders affect the substantial rights of the parties and are therefore appropriate for review here. *Marez v. Marshall*, 2014 MT 333, ¶ 25, 377 Mont. 304, 340 P.3d 520.

¶10 "A court has continuing jurisdiction in matters of maintenance, support, property disposition and child custody." *Lee*, ¶ 49 (citation omitted). After determining whether the district court acted within its jurisdiction, we "review whether the evidence supports the contempt order." *Marez*, ¶¶ 26-27 (citing *Novak v. Novak*, 2014 MT 62, ¶ 37, 374 Mont. 182, 320 P.3d 459).

¶11 Max and Susan filed, and the District Court approved, the Stipulation in 2010. Pursuant to that Stipulation, Max was ordered to pay his already-existing child support arrearage, $500 per month in child support, and "one-half the cost of reasonable fees associated with extracurricular activities and extraordinary expenses for the children." This is now the third contempt proceeding which has arisen out of Max's failure to pay support pursuant to that Stipulation. In March of 2012, after the first contempt proceeding, the District Court ordered Max to pay the $500 per month in child support, as well as an additional $250 per month towards his arrearage and another $50 per month towards one

6

child's orthodontic bill. The District Court further stated that "[t]he nature and extent of incidental charges respondent may be liable for will be determined at a later time" and required Max to continue making payments "until all arrearages and past due incidental charges and medical expenses are paid."

¶12 Over the next several years, Susan continued to incur incidental expenses for the children which she would present to Max—often providing an itemized receipt sent via certified mail and asking for reimbursement within 10 days. Max simply refused to pay these incidental charges in defiance of both the Stipulation and the Court's orders. In addition, he never made payment towards his $1,508 share of the orthodontic bill. By the time of the 2019 contempt hearing, in addition to the incidentals and orthodontic bill, Max was over $3,000 delinquent in child support and owed another $3,908.08 in other medical expenses for the children. The record reflects that Max was in contempt of the orders of the District Court for failing to pay his child support, and the District Court correctly held him in contempt for that failure.

¶13 Seemingly recognizing that repeatedly failing to pay his court-ordered child support obligations may be contemptuous behavior, Max argues that the Stipulation was inequitable and unenforceable. Max first argues the Statute of Frauds applies to the Stipulation because the act of paying for his children's extracurricular activities and extraordinary expenses would somehow take longer than one year. Section 28-2-903(a), MCA, prohibits "an agreement that by its terms is not to be performed within a year from the making of the agreement[.]" First, this issue was not raised before the District Court,

7

and it is a "settled rule in Montana that we will not review an issue raised for the first time on appeal." *Riley v. Hubbard (In re N.G.H.)*, 1998 MT 212, ¶ 19, 290 Mont. 426, 963 P.2d 1275 (citation omitted). Second, this contention is absurd. Susan kept meticulous track of the children's incidental expenses and sent monthly invoices requesting reimbursement to Max. The only reason such expenses were not paid within a year is because Max chose not to pay them in defiance of the District Court's orders.

¶14 Max's second argument relating to the inequitable and unenforceable nature of the stipulation alleges Susan has "gone beyond the parameters of the stipulation" by bringing an action to collect the children's incidental expenses nine years after the Stipulation. Max argues it would "be inequitable to allow Susan to collect another $30,000 in addition to the over $60,000 she has already collected from Max for child support." Again, such a contention is absurd. Max received invoices from Susan for these expenses, and, as noted above, this is the third time Susan sought to hold Max in contempt for failing to pay child support pursuant to the Stipulation. In March of 2012, the District Court issued an order which held Max in contempt and stated that "[t]he nature and extent of incidental charges respondent may be liable for will be determined at a later time." After this order, Susan filed documentation showing Max owed $4,538.68 in incidentals and $1,520.50 in orthodontic bills as of February 2012. Max was on notice that he was seriously delinquent in paying for his children's extracurricular activities and extraordinary expenses for years by both Susan's invoices and the District Court's order. He simply chose not to pay them and now the final bill has come due. The reason that bill is nearly $30,000 is because Max

8

never paid along the way, in defiance of both the Stipulation and the District Court's orders. The District Court correctly ordered Max to pay his past-due obligations when it held him in contempt.

¶15    Finally, Susan has also asked this Court to impose sanctions against Max pursuant to M. R. App. P. 19(5) in the form of the costs and attorney fees she incurred in responding to the present appeal. This Court has the power to issue sanctions, including costs and attorney fees, when we determine an appeal is "frivolous, vexatious, filed for purposes of harassment or delay, or taken without substantial or reasonable grounds." M. R. App. P. 19(5). "Such sanctions are the exception, and this Court will only impose sanctions 'where the appeal is entirely unfounded and intended to cause delay, or where counsel's actions otherwise constitute an abuse of the judicial system.'" *Little Big Warm Ranch, LLC v. Doll*, 2018 MT 300, ¶ 22, 393 Mont. 435, 431 P.3d 342 (quoting *Bi-Lo Foods v. Alpine Bank*, 1998 MT 40, ¶ 36, 287 Mont. 367, 955 P.2d 154). While we have rejected Max's arguments in this case, we decline to use our discretionary power to issue further sanctions pursuant to M. R. App. P. 19(5).

¶16    In sum, we conclude the District Court has jurisdiction over the contempt issues, its findings of fact are not clearly erroneous, its conclusions of law are correct, and it did not abuse its discretion in ordering Max to pay both $28,813.03 in child support pursuant to the Stipulation and $3,710.17 in attorney fees. We decline to issue further sanctions against Max pursuant to M. R. App. P. 19(5).

¶17    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18    Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE