FILED

11/14/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0535

DA 22-0535

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 216N

IN RE THE MARRIAGE OF:

NANCY J. VAIRA,

Petitioner and Appellee,

and

DUANE E. SMITH,

Respondent and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DR 2019-68
Honorable Olivia Rieger, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Michelle J. Maltese, Attorney at Law, Helena, Montana

For Appellee:

Terrance L. Toavs, Law Office of Terrance L. Toavs, PLLC,
Wolf Point, Montana

Submitted on Briefs:  August 23, 2023

Decided:  November 14, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Duane Smith appeals the Seventh Judicial District Court's findings of fact, conclusions of law, and order distributing marital estate after dissolving his marriage with Nancy Vaira. We affirm.

¶3 Nancy and Duane married in 1984 and had three children, all of whom are now adults. At the time of their dissolution, Duane was seventy-two years old, and Nancy was sixty-four. Until his retirement in 2017, Duane worked as a CPA. Nancy worked part-time when the children were young and worked full-time as the children grew. The family resided in Sidney, Montana, in a home that belonged to Duane prior to the marriage.

¶4 Nancy and Duane separated in 2018. In 2019, Nancy filed for divorce. The court held a two-day hearing in November and December 2021. By agreement of the parties, the District Court ordered the dissolution of the marriage on December 31, 2021, with the division of the marital estate to follow. In June 2022, the District Court entered its findings of fact, conclusions of law, and order distributing the marital estate (June Order), which it found to be worth $2,225,797. Duane moved under M. R. Civ. P. 59(e) to amend the June Order, arguing that the District Court had made several mistakes in the calculation of the

marital estate and the distribution of property. In August 2022, the District Court denied Duane's motion to amend (August Order).

¶5 On appeal, Duane raises three issues. First, he claims the District Court erred by excluding from the marital estate property that Nancy inherited or by relying on improper evidence to establish that property's value. Second, Duane argues that the court improperly excluded several cash accounts from the marital estate. Finally, Duane argues that the District Court incorrectly calculated or applied an equalization payment.

¶6 We review a district court's findings of fact in a property division to determine whether they are clearly erroneous. *In re Marriage of Frank*, 2022 MT 179, ¶ 32, 410 Mont. 73, 517 P.3d 188. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of evidence, or if, upon review of the record, we are convinced the district court made a mistake. *In re Marriage of Kostelnik*, 2015 MT 283, ¶ 16, 381 Mont. 182, 357 P.3d 912. Absent clear error in the findings, the court's division of property will be upheld unless the court abuses its discretion. *In re Marriage of Frank*, ¶ 32 (citing *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39). A district court abuses its discretion if it acts in an arbitrary manner without conscientious judgment, or where it exceeds the bounds of reason, resulting in a substantial injustice. *In re Alexander*, 2011 MT 1, ¶ 11, 359 Mont. 89, 246 P.3d 712.

¶7 Under § 40-4-202(1), MCA, a district court must, upon the dissolution of marriage, "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title to the property and assets is in the

name of the husband or wife or both." In determining the equitable apportionment of property, a district court must consider:

> the duration of the marriage and prior marriage of either party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income.

Section 40-4-202(1), MCA. Where a dissolution involves a spouse's inherited property, the court also must consider "those contributions of the other spouse to the marriage, including: (a) the nonmonetary contribution of a homemaker; (b) the extent to which the contributions have facilitated the maintenance of the property; and (c) whether or not the property division serves as an alternative to maintenance arrangements." Section 40-4-202(1)(a)-(c), MCA. The core premise of § 40-4-202, MCA, is that all property belonging to either party, regardless of how either party came into ownership of it, shall be finally and equitably apportioned in a dissolution action. *In re Funk*, ¶ 16. The district court is charged only with adequately considering all the facts and applicable statutory factors in each case and equitably apportioning all property based on that consideration. *In re Funk*, ¶ 15. Whether a particular piece of property is included in or excluded from the marital estate is irrelevant, so long as the district court adequately considers the property. *In re Funk*, ¶ 15.

¶8 When valuing property, district courts have broad discretion and may base a final valuation on lay testimony, expert testimony, documentary evidence, or any combination supported by the record. *In re Marriage of Geror*, 2000 MT 60, ¶ 18, 299 Mont. 33, 996

4

P.2d 381. As a general policy, district courts should endeavor to value property at or near the time of dissolution. *In re Marriage of Hochhalter*, 2001 MT 268, ¶ 17, 307 Mont. 261, 37 P.3d 665. Valuation of property in a dissolution is nonetheless discretionary, and the district court is free to rely on any valuation that is reasonably supported by the record. *In re Marriage of Swanson*, 2004 MT 124, ¶ 15, 321 Mont. 250, 90 P.3d 418.

Valuation and Distribution

¶9    The District Court found that several items were the sole property of either Duane or Nancy. Relevant to this appeal, the District Court determined that property Nancy's parents devised to her belonged entirely to Nancy. Sometime prior to December 2010, Nancy's mother died, leaving Nancy approximately $30,000 in a life insurance policy. In December 2010, Nancy's father died. Nancy's father devised to Nancy and her seven siblings a farm in Lambert, Montana. Nancy and her siblings settled her father's estate in 2017. Nancy's portion of the property consisted of roughly 315 acres, which included Nancy's childhood home (the Farm). Upon settling the estate, the Farm was deeded to Nancy and Duane as tenants in common with the right of survivorship.

¶10    At trial, Nancy presented the testimony of Leif Anderson, a local real estate broker. Anderson testified that, in his professional opinion, as of 2021 the value of the Farm as agricultural land was $519,150. The court also considered a 2017 appraisal valuing the entirety of the Vaira farm, prior to division, at $2,671,239.12. Duane testified that he believed the Farm to be worth at least $500,000. Other than his own testimony about what he believed the Farm was worth, Duane presented no evidence or expert testimony. In the

5

June Order, the District Court held that, even though both Nancy and Duane were listed on the deed of the property, Nancy was entitled to sole ownership of the Farm as inherited property. The court found the value of Nancy's inherited portion of the Farm to be $333,905. The District Court arrived at this valuation by taking one-eighth the value of the undivided Vaira farm, as determined by the 2017 appraisal. Although the court awarded the Farm to Nancy alone, it found that Duane had expended considerable labor on the Farm and awarded him $22,500 for 300 hours of his time.

¶11 Upon settling her father's estate, the Farm was deeded to Nancy and Duane. Duane argues that because his name was added to the deed, he and Nancy shared an ownership interest in the Farm and it was improper for the court to exclude the Farm from the marital estate. Irrespective of whether the Farm should have been included in the marital estate, Duane also argues that the District Court erred when it used the parties' discovery, as opposed to expert testimony, to determine the Farm's value and did not sufficiently credit Duane for his work on the property, which improved its value. Duane argues that by disregarding the testimony of Nancy's expert—who appraised the Farm in 2021 at $591,150—and instead relying on the 2017 appraisal of the undivided Vaira property, the District Court committed reversible error.

¶12 Nancy responds that no record evidence shows that Duane's contributions increased the market value of the Farm. Nancy adds that the District Court's determination to compensate Duane for 300 hours of labor was within the court's discretion to determine an equitable apportionment. Nancy argues that Duane's name was included on the deed solely

6

for "estate planning purposes" and the District Court properly gave little weight to that fact. Nancy maintains that the court's valuation was equitable, and any error was harmless.

¶13 The District Court's June and August Orders make clear that it adequately considered all the required statutory factors when it apportioned the Farm. In the August Order, the District Court carefully and thoroughly explained its consideration of all three factors of § 40-4-202(1)(a)-(c), MCA. The court noted that because the marital home belonged to Duane before the marriage, and considering Duane's advanced age, his health conditions, and the length of time Duane had lived in the home, it was equitable to award the marital home primarily to Duane and to compensate Nancy for her contributions. Similarly, the court found that because Nancy had inherited the Farm, and because she was living on the Farm full-time when the parties separated, it was equitable to award the Farm solely to Nancy and to compensate Duane for his contributions to it. The court further determined that, although Duane was on the deed, Nancy's father's will named only his children as beneficiaries. Duane did not offer any evidence, other than his own testimony, that his work contributed to the Farm's value. Duane never produced an appraisal of the Farm, despite promises to do so through discovery, and was unable to produce any records of purchases he claimed to have made for the Farm. Duane's testimony, the court noted, showed that Duane did not know if the Farm had produced income during the marriage, and, even if it had, Duane conceded that any income would have gone to the Vaira partnership alone, negating Duane's argument that the assets were commingled.

¶14 The court reasonably determined that Duane's only claim to the Farm was that he was married to the person who inherited it. Duane's marriage to Nancy did not entitle him to an automatic apportionment of the Farm. It required only that the District Court consider the value of the Farm when determining an equitable apportionment and allow Duane the opportunity to argue that it would be equitable to apportion part of the Farm to him. *Rintoul v. Rintoul*, 2014 MT 210, ¶ 11, 376 Mont. 167, 330 P.3d 1203 (citing *In re Funk*, ¶ 19). Despite Duane's failure to produce record evidence of his contributions, the District Court found it equitable to award Duane for 300 hours of labor Duane performed on the Farm. Although Duane argues his work entitles him to a percentage ownership of the Farm, the District Court was persuaded by Nancy's expert, who testified that the Farm's value derived entirely from its location and current market demand and was unaffected by the labor of the parties.

¶15 When determining the value of the Farm, the District Court was faced with conflicting evidence. Neither party produced a current appraisal of the Farm. After considering the available record evidence and the testimony of the witnesses and the parties, the Court chose to rely on the 2017 appraisal of the Vaira property. The District Court explained it rejected the valuation proposed by Nancy's expert because he was a home broker and not a property appraiser. After considering the factors of § 40-4-202(1)(a)-(c), MCA, and considering the broader distribution scheme, the District Court determined that awarding the Farm solely to Nancy and compensating Duane for his labor was equitable. The trier of fact has the exclusive power to weigh the value of

conflicting evidence and determine the credibility of witnesses. *In re Marriage of Lewis*, 2020 MT 44, ¶ 8, 399 Mont. 58, 458 P.3d 1009. Duane has not established clear error in the court's findings.

¶16 Whether the District Court classified the Farm as included or excluded in the marital estate is not relevant to whether the final apportionment was equitable. *In re Funk*, ¶ 15. Furthermore, when reviewing a district court's apportionment of property in a dissolution action, the role of this Court is not to second-guess every individual piece of a complex distribution. *In re Marriage of Richards*, 2014 MT 213, ¶ 24, 376 Mont. 188, 330 P.3d 1193. Where, as is the case here, a district court considers the factors of § 40-4-202(1), MCA, and where that court's apportionment is reasonable, we will not disturb the ruling. *In re Marriage of Geror*, ¶ 18. The District Court gave proper consideration to the statute and to this Court's precedent. It committed no error of law and did not abuse its discretion when it awarded the Farm in its entirety to Nancy.

Edward Jones Accounts

¶17 At issue are two Edward Jones financial accounts that the District Court found Nancy purchased primarily with inherited funds and therefore belonged solely to Nancy. In deposition and at trial, Nancy testified that she funded the two accounts almost entirely with inherited funds or with income derived from property purchased with inherited funds. Duane did not rebut Nancy's testimony or present evidence that the accounts were funded with anything other than inherited funds. The District Court determined that the two

9

accounts were the sole property of Nancy, except for $6,000 which the parties agreed Duane had deposited in one of the accounts.

¶18 Duane argues that District Court committed clear error by determining the accounts were purchased with inherited funds because both accounts existed prior to the death of Nancy's father. Though Duane agrees that Nancy did deposit large amounts of inherited money into the accounts following the death of her father, Duane argues that the accounts were commingled with marital assets and therefore he was entitled to partial ownership of them. Nancy counters that the accounts were funded by inherited money following the death of her mother and that the District Court was correct to award the accounts solely to her.

¶19 As with the Farm, whether the District Court properly included or excluded the Edward Jones accounts from the marital estate is not the relevant inquiry. *In re Funk*, ¶ 15. The District Court fully considered testimony from both Duane and Nancy regarding the financing of the Edward Jones accounts. In deposition and at trial, Duane confirmed that Nancy held her own accounts to manage her inheritance and rental income. Although it awarded the accounts to Nancy, the District Court credited Duane for his contributions. Despite Nancy's repeated requests, including a motion to compel, Duane failed to produce any evidence or allege that the accounts were funded with anything other than Nancy's inherited property. After considering all the available evidence and testimony, the District Court determined that the most equitable distribution was to award the accounts solely to Nancy, except for the $6,000 credited to Duane. The June and August Orders demonstrate

that the District Court fully considered the relevant factors of § 40-4-202, MCA, and determined, within the context of the entire distribution scheme, that it was equitable to award the accounts solely to Nancy. Considering the court's treatment of the accounts in the context of its distribution of the entire estate, we conclude that Duane has not shown the District Court abused its discretion or disregarded statutory requirements.

Equalization Payment

¶20    The District Court, Duane asserts, arrived at an incorrect value for the marital estate when it excluded assets that should have been included. Duane points out that the District Court excluded assets worth $42,762 that it awarded solely to Duane and assets worth $1,297,623 that it awarded solely to Nancy. Because the District Court failed to reach a correct valuation of the marital estate, he maintains that the equalization payment was erroneous. Assuming the District Court did not err in its valuation of the marital estate, Duane argues in the alternative that the District Court erred by awarding the full difference between each party's allocated portion of the estate—functionally doubling the payment amount required to make the distributions equal. Nancy responds that the District Court did not intend for the post-dissolution estates to be equal, merely for the division to be equitable, which it was.

¶21    In dissolution proceedings, district courts must equitably apportion the property belonging to either or both parties. Section 40-4-202(1), MCA. An equitable apportionment does not have to be an equal apportionment. *In re Marriage of Frank*, ¶ 35. District courts are vested with broad discretion in achieving an equitable distribution.

*In re Marriage of Baer*, 1998 MT 29, ¶ 35, 287 Mont. 322, 954 P.2d 1125. Section 40-4-202, MCA, allows district courts in dissolution proceedings to order cash payments from one spouse to the other to make the overall distribution equitable. *See Smith v. Smith*, 2015 MT 256, ¶ 29, 381 Mont. 1, 358 P.3d 171. Equalization payments must be reasonable and cannot exceed the net worth of the estate. *In re Marriage of Dennison*, 2006 MT 56, ¶ 22, 331 Mont. 315, 132 P.3d 535.

¶22   First, because we have concluded that the District Court did not err in awarding Nancy virtually all of her inherited property, Duane's argument predicating error on the exclusion of such property from the marital estate necessarily fails. Duane's remaining argument, that the District Court made a mistake by awarding Nancy double the equalization payment, is refuted entirely by the District Court's detailed findings in the August Order. The District Court expressly noted that the cash payment was not meant to technically equalize the estates, but to provide for an equitable overall distribution, as required by Montana law. Section 40-4-202, MCA. In the August Order, the District Court explained why the cash payment was equitable in the context of the distribution scheme as a whole, explaining that it was designed to divide Duane and Nancy's property equitably as opposed to requiring an equal distribution of homes, vehicles, machinery, and other assets that did not easily divide. For instance, the District Court determined, based on Duane's needs, that it would be inequitable to force the parties to sell the family home, even though that would have resulted in a more equal distribution. The court also considered that Nancy was primarily responsible for paying for the needs of the children

from her part-time work, which Duane would supplement with an "allowance" when Nancy's part-time income was insufficient to cover expenses. The District Court explained its consideration of the duration of the marriage, the health of the parties, employment prospects, and the need for post-dissolution maintenance in determining that its distribution was equitable. Although the District Court's distribution resulted in Nancy receiving a post-dissolution estate larger than Duane's, Duane has failed to show the distribution was unreasonable or that the District Court abused its discretion.

¶23 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Duane has not demonstrated that the District Court abused its discretion or that its findings were clearly erroneous. The District Court's division of property is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ JIM RICE